Danny T. HILL et al., Appellants,

v.

D. A. MOORE, Appellee.

No. 6447.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 22, 1954.

Ross H. Scott, Dallas, and Paul Spillman, Wellington, for appellants.

Jack Bradley, Hugo, Okl., and B. Ray Smith, Paris, for appellee.

PITTS, Chief Justice.

This is an appeal from two damage suits consolidated for trial seeking recovery of personal damages which arose out of the same alleged factual causes as a result of one motor vehicle running into the rear of another motor vehicle on a public highway. Appellants Danny T. Hill and Dawn Ealine Hill, minors, sued appellee D. A. Moore through their mother and legally appointed guardian, Launa Hill, for damages in the sum of $10,000 as a result of the death of their father, William T. Hill, Jr., by reason of the alleged collision. Appellant W. R. McDurmon sued the same appellee D. A. Moore for damages in the sum of $15,-836.73 as a result of alleged injuries sustained by his wife, Laura Lee McDurmon, by reason of the same alleged collision. The two suits were consolidated for trial upon a joint motion of plaintiffs and without any objections of defendant.

Appellants as party plaintiffs alleged in effect that the collision occurred early on the morning of March 15, 1952, when the deceased William T. Hill, Jr. was operating his 1939 two-door Chevrolet automobile upon U.S. Highway 83 near Wellington, Collingsworth County, Texas, with Mrs. Laura Lee McDermon as a passenger therein, when the Hill automobile ran into and collided with the rear end of an International truck-tractor with a semi-trailer attached thereto and loaded with posts and poles while the said truck with trailer attached was stopped or parked on the paved part of the highway without having put out flares or lights as warnings to show danger; that the said truck bore a 1951-52 Arkansas license number C9–412

and the trailer bore a 1951-52 Arkansas license number ST 12-371 and they both belonged to appellee D. A. Moore of Arkinda, Arkansas; that the same was being operated and controlled at the time of the collision by appellee's agent, servant and employee, T. H. Little, who was then acting within the course of his employment and within the scope of his authority in the furtherance of his employer's business; and that as a result of several alleged acts of negligence by appellee's agent, servant and employee, T. H. Little, the collision occurred which resulted in the damages sought.

Appellee joined issues with appellants after first presenting preliminary matters that we think were properly disposed of by the trial court. In his answer on the merits, appellee denied specially and generally appellants' material allegations and charged such were contradictory and inconsistent. He further alleged that T. H. Little was not his agent, servant or employee on the occasion alleged and that Little was not acting within the course or scope of his employment by appellee at such time and place alleged but that Little was solely upon a personal and independent mission of his own at the time the alleged collision occurred. Appellee further alleged that the collision in question resulted from several alleged acts of contributory negligence on the part of the deceased William T. Hill, Jr., and Laura Lee McDurmon.

The record reveals that the parents of the Hill children were divorced on March 14, 1952, the day preceding the father's death early the next morning; that their father then resided in San Antonio, Bexar County, Texas, and their mother resided at Lefors in Gray County, Texas; that on the said date the Hill children's father, William T. Hill, Jr., who was then 28 years old, drove by the place where Mrs. Laura Lee McDurmon, who was then 25 years of age, was working in San Antonio about 4:00 p.m. o'clock and the two of them left immediately in the Hill automobile to drive to Lefors where Hill intended to visit his minor children while Mrs. McDurmon went along merely for pleas-

ure; that Mrs. Laura Lee McDurmon was then married to appellant W. R. McDurmon and they had two children, ages four years and one and a half years, but the McDurmons were then separated but not divorced; that during the journey of Hill and Mrs. McDurmon the alleged collision occurred about 12:00 midnight or 12:30 a.m. o'clock of March 15, 1952, which resulted in the alleged death of Hill and the injuries to Mrs. McDurmon; that soon thereafter appellant W. R. McDurmon and wife Laura Lee McDurmon became reconciled as husband and wife and have since lived together as such; that the Hill children through their mother as guardian thereafter filed suit originally against defendant D. A. Moore in the district court of Collingsworth County for damages in the sum of $75,000 and the same was tried on November 3, 1953, before a jury and the same trial judge who tried this cause and the same leading counsel for the respective parties participating therein who are participating here; that after the plaintiffs had introduced their evidence and rested, defendant D. A. Moore moved for an instructed verdict, whereupon plaintiffs then moved for a non-suit without prejudice and such was granted and so ordered after defendant announced he had no objections thereto. Thereafter the same plaintiffs acting again through their mother as guardian filed this, a new action against D. A. Moore seeking damages in the sum of $10,000.00 and plaintiff W. R. McDurmon filed an action for damages against D. A. Moore for the sum of $15,836.73 which two actions were consolidated as previously stated.

Upon a trial of the cases consolidated before a jury on April 5, 1953, plaintiffs as appellants herein offered their evidence and rested. Whereupon defendant D. A. Moore as appellee moved to withdraw the case from the jury and render judgment in his behalf. Appellants then sought to withdraw their announcement of ready for trial and ask for a continuance of the case. Appellee resisted Appellants' said motion on various grounds but particularly because it had been two years since the al-

leged collision occurred and a case rising out of the same facts had been once heard before a jury and a non-suit was permitted after the evidence closed. Appellants' said motion was overruled by the trial court and appellee's motion for judgment was sustained and judgment was accordingly rendered but was not signed and entered until April 23, 1954, from which appellants have perfected an appeal.

The appeal is presented here upon two points of error by appellants and three cross points by appellee, followed by two counterpoints by appellee resisting appellants' two points of error. In passing upon the matters in the order in which events occurred and in the natural sequence or succession, we should first dispose of appellee's cross points.

■ In his first cross point, appellee charges that appellants failed to file their appeal bond within thirty days from the date judgment was rendered as is required by Rule 356(a), Texas Rules of Civil Procedure, for which reason the appeal should be dismissed. Appellee asserts that the trial court announced and rendered judgment on April 6, 1954, and the said bond was not filed until May 10, 1954, some 35 days after judgment. The record reveals that the trial court did announce judgment on April 6, 1954, but the same was signed and entered by the trial judge on April 23, 1954. In our opinion, the 30-day period required for filing an appeal bond as provided for in Rule 356(a) began to run on April 23, 1954, the date the trial court signed and entered its judgment. The appeal bond was filed on May 10, 1954, which was well within the 30-day period. Rule 306a as amended. Appellee's first cross point is therefore overruled.

■ In his second cross point, appellee contends that the trial court's judgment rendered in the former case on November 3, 1953, sustaining the Hill children's motion for a non-suit upon the same set of facts growing out of the same alleged collision as were presented here, constitutes a final judgment and is res adjudicata of all

matters involved in the instant case on appeal. We do not share appellee's views asserted since the judgment of dismissal was entered "without prejudice to re-filing." Appellee's second cross point is therefore overruled.

■ In our opinion, appellee's third cross point has merit. He there charges that the trial court erred in permitting the witness Noel D. Calloway, a state highway patrolman, to testify over objections of appellee that some two and one-half or three hours after the collision occurred, T. H. Little, the alleged driver of appellee's truck, told him (the said witness) that appellee D. A. Moore owned the truck involved in the collision. Appellants resist the charges here made by appellee, contending that the statement of ownership of the truck made to the witness Calloway by Little, the truck operator, was admissible under the rule of res gestae. To sustain their contentions appellants rely upon the Court of Civil Appeals case of Empire Gas & Fuel Co. v. Muegge, 116 S.W.2d 758, 759. The holdings of the Court of Civil Appeals relied on here by appellants were reversed by the Texas Supreme Court as reported in 135 Tex. 520, 143 S.W.2d 763, and the latter opinion has since been many times cited as the law in Texas. That was a damage suit as a result of a motor vehicle collision in which a truck was involved. Soon after the collision, the driver of the truck (defendant's operator) gave to one of the plaintiffs a written statement showing the defendant's name as owner of the truck together with his own name. The said memorandum was, over objections, admitted in evidence at the trial against the truck owner and the Court of Civil Appeals sustained the trial court in the matter. The Supreme Court overruled both lower courts and held that the said memorandum should not have been admitted in evidence and that no effect could be given it as evidence. In support of its holding, it cited many authorities, among them being the case of Stokes Bros. v. Thornton, 91 S.W.2d 756, by this Court, and Lewis v. J. P. Word Transfer Co., 119 S.W.2d 106, writ refused. Concerning the

latter case cited the Supreme Court said [135 Tex. 520, 143 S.W.2d 769],

"In that case, the trial court admitted a statement, made by the driver of the truck at the scene of the accident and soon after its occurrence, to the effect that he was working for the defendant transfer company and that the truck belonged to it. It was held that this evidence was no part of the res gestae but was mere hearsay and should have been excluded. In support of the conclusion that the statement as to the driver's employment was not part of the res gestae, the court quoted from the opinion written by Associate Justice Martin in Stokes Bros. v. Thornton, Tex.Civ.App., 91 S.W.2d 756, 757, as follows: 'His employment was not a part of the collision. That transaction, speaking of itself spontaneously through him at the time, could not include any such unrelated statement'."

For the reasons stated it is our opinion that the same rules of law apply here and the trial court erred in admitting the testimony of the witness Calloway concerning the statement Little, the truck driver, made to him to the effect that D. A. Moore owned the truck in question, and appellee's third cross point is sustained.

In their first point of error, appellants contend that the trial court erred in its refusal to admit in evidence their exhibit number 3, the same being duplicate registration certificates for the truck and trailer in question purporting to show them registered in the State of Arkansas in the name of D. A. Moore as owner. Appellants contend such duplicate certificates were admissible particularly in support of Little's statement of ownership of the truck and trailer by appellee Moore made to the witness Calloway, which statement we have already held was not admissible under the announced authorities. These original exhibits are before us and the duplicate certificates appear to be carbon copies bearing no seal or the owner's signature, each to be mailed to Ross H. Scott,

Dallas, Texas. They do not appear to bear any date of issuance but the certificate for the truck covers registration from October 7, 1952, to June 30, 1953, while the collision occurred on March 15, 1952, and the certificate for the trailer covers registration from October 1, 1951, to June 30, 1952. The fees charged for registration appear to have been collected by inspector O. M. Greer on December 31, 1953, and each duplicate validated on the same date, which was more than 21 months after the collision occurred. In support of their claims, appellants again rely upon the case of Empire Gas & Fuel Co. v. Muegge, Tex.Civ. App., 116 S.W.2d 758, which was reversed by the Supreme Court. 135 Tex. 520, 143 S.W.2d 763. The Supreme Court there held that photostatic copies of similar instruments should not be admitted in evidence because they were without seal and not properly authenticated otherwise. In our opinion, the same rule should apply to carbon copies without a seal and otherwise not properly authenticated. At any rate, appellants were apparently proposing to offer them as secondary evidence without giving advance notice to appellee of their intentions so to do, insofar as the record reflects. Likewise insofar as the record reflects, the appellants had not called upon appellee to produce the original instruments or for admission of any alleged facts or had not sought to take the depositions of either appellee D. A. Moore or T. H. Little, the truck operator, although it had been more than two years from the date of the collision to the date of the trial. It should also be observed that the duplicate registration certificate for the truck was for the period beginning some seven months after the alleged collision occurred. For all of these reasons, appellants' first point of error is overruled.

In their second point, appellants charge error because the trial court rendered judgment for appellee when in fact the evidence revealed they had made out a prima facie case. Again, appellants rely upon the erroneously admitted statement of Little, the truck operator, to the witness Calloway for establishing ownership of the

truck in appellee D. A. Moore, for which reason appellants contend agency and the course of employment by Moore of Little is presumed, since Little was operating the truck. Appellants likewise presume, without any evidence of probative force to support such presumption, that the truck and trailer in question were stopped and parked on the pavement at the time of the collision.

 In their brief, appellants are critical of appellee because of his failure to offer testimony on the issues joined by the pleadings. In the case of Lykes Bros.-Ripley S. S. Co., Inc., v. Pluto, Tex.Civ. App., 146 S.W.2d 414, 416, it was held concerning such a matter that;

"Until the plaintiff, appellee herein, has established prima facie the liability of appellant for the injuries alleged to have been sustained by him by proof of his employment by appellant, Lykes Bros.-Ripley Steamship Co., Inc., it is not incumbent upon appellant to make proof of any facts upon which it relies as a defense to appellee's cause of action. It is the established rule in this state that 'a defendant cannot be called on to produce evidence where the plaintiff has failed to bring sufficient proof to prima facie sustain his cause of action. 2 Wharton on Evidence, § 1268.' Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049, 1052; Davis v. Castile, Tex.Com.App., 257 S.W. 870; Missouri, K. & T. Ry. Co. v. Smith, Tex.Civ.App., 101 S.W. 453; Longhorn Drilling Corporation v. Padilla, Tex.Civ.App., 138 S.W.2d 164."

In support of the rules of law there announced, we also cite 31 C.J.S., Evidence, § 156, pages 849–850; Texas Power & Light Co. v. Evans, Tex.Civ.App., 225 S. W.2d 879; Moreland v. Hawley Independent School Dist., Tex.Civ.App., 163 S.W.2d 892; Longhorn Drilling Corporation v. Padilla, Tex.Civ.App., 138 S.W.2d 164. Proof alone of ownership of a truck involved in a collision will not support a presumption of agency of the truck opera-

tor at the time of the collision. Kirk v. Harrington, Tex.Civ.App., 255 S.W.2d 557.

In support of their pleadings of appellee's alleged liability because of his ownership of the truck and trailer, the agency of Little and the course of his employment in the furtherance of appellee's business and the said alleged agent's acts of negligence by parking the truck and trailer on the paved portion of the highway, appellants offered testimony of their witnesses whose testimony concerning these and other matters will now be set forth briefly.

Jimmie Kelson, the Wellington undertaker, testified that he and one of his employees went to the scene of the collision about 1:00 or 1:30 a. m. o'clock on March 15, 1952, and found the demolished Chevrolet automobile immediately behind the truck and trailer, both on the pavement and both headed north; that there was a car parked across the highway from the two motor vehicles involved in the apparent collision and several unknown people were around the place of the accident; that he took a man, whose name he learned later was Hill, from the demolished Chevrolet and found the woman, who apparently had been riding with Hill, on the ground near the car; that the man and woman were both injured and the woman asked him immediately upon finding her if Hill was seriously hurt; that both persons were taken immediately to the Wellington hospital.

Bill McCarver, Wellington city marshal, testified he was advised of the collision between 1:00 and 2:00 o'clock that morning and went to the scene immediately thereafter; that on his way out he met the ambulance coming from the point of collision; that on his arrival, he found the vehicles involved in the collision attached together on the highway, both facing north, and a man unknown to him was working on the truck engine but he did not know if he was the truck operator; that the man said he was having carburetor trouble and that his truck had died further down the highway but he quickly got it started and

it had subsequently died again but he thought he could get it started; that he soon got the truck started and that he pulled it off of the highway; that he said he did not see the car coming that hit him and that he said he had not had time to put out flares.

Noel D. Calloway, a state highway patrolman stationed at Memphis, 29 miles from the point of collision, testified that he was called and advised about the collision about 2:15 a. m. o'clock on the morning in question and went soon thereafter to the scene of the collision; that he observed conditions generally there and found short skid marks on the pavement at the point of collision where the automobile apparently hit the truck with an impact that stopped it suddenly; that upon his arrival the truck was then parked off of the pavement of the highway; that he soon thereafter found and talked to T. H. Little about 3:15 or 3:30 a. m. o'clock at a cafe on the highway and Little told him he was the driver of the truck and in charge of it at the time of the collision; that D. A. Moore of Arkinda, Arkansas, was the owner of the truck, which testimony has been previously herein discussed by us. This witness gave further testimony in support of that given by the undertaker and the Wellington city marshal.

Laura Lee McDurmon testified mostly about her family and her marital status at the time of the collision in question and her acquaintance with the deceased Hill. She gave little testimony of value concerning the collision in question. She did testify that Hill had recently had new headlights installed on his automobile and that on the night in question he drove with his headlights on. She further testified about her injuries received and that she did not see the truck that night and was not sure whether or not she was asleep at the time of the collision. She also testified she was sure Hill would have avoided hitting the truck if she had seen it and advised him of the danger.

The testimony generally of appellants' witnesses reveals that the paved part of the highway at the point of collision was about 20 feet wide, with graveled shoulders slightly sloping on each side about 12 feet wide; that there was ample room on either side of the truck for the Hill automobile to have safely passed the truck and trailer; that the highway was straight and without obstructions on each side of the point of collision for a distance of from one-fourth to one mile (the variation in distance being given by different witnesses); that the weather was clear and calm and a motor vehicle could be observed that night on that highway for a distance of from 500 feet to 900 feet (the variation in distance being given by different witnesses); that apparently the Chevrolet automobile plunged into the back part of the truck and trailer with such force as to drive the engine of the automobile back into the front seat of the same and suddenly kill the driver.

Several witnesses testified that they saw no flares around the point of collision upon their arrival about an hour or more after it occurred and one witness testified that the man working on the truck when he arrived said he had not had time to put out flares. There is evidence that the truck driver had been stopped "back down the road" because of carburetor trouble but he soon got his truck started and there is no evidence of further discovered trouble until an hour or more after the collision when a man was found working on the truck engine. There is no evidence found in the record to the effect that the truck and trailer were stopped and parked on the highway at the time of the collision. There is no evidence revealing whether or not the officers of the law, who investigated the matter and testified, ever asked T. H. Little or "the man working on the truck" if he had stopped on the highway or was there parked at the time the collision occurred.

In our opinion appellants failed to raise an issue of fact by competent evidence to the effect that appellee was the owner of the truck and trailer involved in

the collision; that the driver of the said truck was the agent, servant or employee of appellee; that the driver of the truck was acting within the course or scope of his employment by appellee or in the furtherance of appellee's business affairs; or that the truck driver was in any way negligent in the operation of his truck and particularly by stopping it or parking it on the highway at the time of the collision. These are the matters pleaded and relied upon by appellants for recovery and they were required to offer enough competent evidence at least to establish a prima facie case on these material matters pleaded by them before they were entitled to have such submitted to the jury. In so holding, we are aware of the law giving a jury the right to pass on controverted issues or issues raised by competent evidence and that a jury verdict under such circumstances is binding if there be any evidence of probative force to support such. However, such evidence must legally have some probative force and not be merely speculative or raise some suspicion of a fact issue. If their be no competent evidence to raise the material issues pleaded, it is the duty of the trial court to give peremptory instructions or to withdraw the action from the jury and render judgment as a matter of law. Urso v. City of Dallas, Tex.Civ.App., 221 S.W.2d 869, writ refused.

According to the testimony of appellants' witnesses about existing conditions at the time and place of the collision it would appear also that an ordinarily prudent person would not have driven his automobile with terrific force into the rear end of another vehicle on a straight, unobstructed public highway with visibility of from 500 feet to 900 feet ahead of him. To do so would strongly indicate some degree of negligence on his part. Standard Paving Co. v. Webb, Tex.Civ.App., 118 S. W.2d 456.

For the reasons stated appellants' points of error are overruled and the judgment of the trial court is affirmed.