**F. L. KELLY et al., Appellants,**

v.

**Edward GREEN et ux., Appellees.**

No. 3276.

Court of Civil Appeals of Texas.

Eastland.

Nov. 23, 1956.

Rehearing Denied Dec. 14, 1956.

Wheat & Newton, Seymour, Allen, Johnson & Cherry, Wichita Falls, for appellants.

Brookreson & Brookreson, E. D. Garrison, Seymour, for appellees.

GRISSOM, Chief Justice.

Edward and Gertie Green recovered a judgment against Bobby Joe McWhorter and F. L., William R. and James B. Kelly for damages sustained in a collision between the Kellys' truck driven by McWhorter and the Greens' automobile. The Kellys have appealed.

The Kellys were partners in Kelly grain Company and owned elevators in Megargle and Weinert. McWhorter had been hired as the Kellys' "elevator man" at Megargle but in August the Kellys had started tearing down and rebuilding their elevator at Weinert. For about five days before the collision William R. and James B. Kelly each morning drove from Megargle to Weinert in an automobile which belonged to one of them and took McWhorter with them. They would ordinarily work from nine to six o'clock tearing down and rebuilding the grain elevator and the three would usually then return to Megargle in said automobile. On August 9th the Kellys left the elevator at Weinert about 4:30 or five o'clock in the afternoon. They told McWhorter they were going to Haskell, about twelve miles away, on business and would return to the elevator and "pick him up" about the usual quitting time. All the employees quit work about six o'clock. McWhorter waited for the Kellys about fifteen minutes. He then got in an old truck owned by the Kellys, which was being used on the elevator lot to hoist portions of the elevator wall into place and sometimes to move grain on the elevator lot, and started to Lake Kemp to fish. The collision occurred before McWhorter reached Seymour. Going from Weinert to either Lake Kemp or Megargle he would have gone through Seymour.

The controlling question is whether there was a fact issue as to McWhorter acting in the course of his employment at the time of the collision. In order for the Greens to recover damages from the Kellys for the negligence of McWhorter the Greens were required to prove by a preponderance of the evidence that McWhorter was then acting within the scope of his employment. If at the time of the collision McWhorter was not doing anything for his employers but was merely on a fishing trip for his own pleasure, of course, the Kellys were not liable for his negligence.

At the time of the collision McWhorter was in the general employment of the Kellys and he was then driving said truck. Proof thereof was sufficient, in the absence of evidence to the contrary, to raise a presumption that McWhorter was then acting within the scope of his employment. The precise question then is whether or not the testimony of all the defendants destroyed that presumption so that no issue of fact remained for submission to the jury as to whether McWhorter was acting within the scope of his employment. The clear, positive and unequivocal testimony of all of the defendants was to the effect that McWhorter had been instructed by his employers not to drive the truck on the highway and to use it only on the elevator grounds. The undisputed evidence of the defendants was to the effect that McWhorter was driving the truck at the time of the collision without the knowledge or consent of his employers and in violation of their instructions and that McWhorter was then on a mission of his own. If an issue of fact as to whether McWhorter was acting in the scope of his employment was raised, it was because such testimony came from the defendants, who are interested witnesses.

The great weight of authority recognizes that the presumption, based on the fact that the driver is in the general employment of the owner of the automo-

bile that he was driving, that the driver was acting in the course of his employment is overcome, as a matter of law, by positive and undisputed evidence that the driver was not acting within the scope of his employment but was on a mission of his own. It has often been held that such presumption is not evidence but suffices in lieu thereof until positive evidence to the contrary is adduced by those who possess that information. Such presumption is created for administrative convenience, to be resorted to in the absence of evidence that the driver was within the scope of his employment, so as to require the party having knowledge of the real facts to produce evidence thereof. When the parties having such knowledge properly do so, such presumption disappears "and (it) does not create a conflict with the defendant's evidence;—in such event the plaintiff must introduce independent evidence to create a conflict with the evidence of the defendant to require its submission to the jury." 5 A.L.R.2d 204. The rule relative to presumption of agency has been stated as follows:

"Agency presumed in such case is an assumption employed to promote justice between litigants in the absence of evidence to the contrary and the consequences of the presumption are merely procedural; *when met by the defendant's testimony that the truck was not being operated upon the business of the defendant, but was being used by the driver upon an errand of his own, no assumption or presumption of agency will be warranted merely from ownership and operation, and upon such evidence the presumption becomes inoperative and of no more force than as if it had never existed; and thereafter in order for the plaintiff to succeed he is bound either to discredit the defendant's evidence or to produce evidence of agency or evidence from which it could be inferred logically; and failure to do so on the part of the plaintiff would require the direction of verdict for the defendant.*" (Emphasis ours.) 5 A.L.R.2d 205.

The presumption that a general employee of the owner of an automobile was operating it within the scope of his employment has been held rebutted as a matter of law by (1) "evidence that the driver was not acting in the line of his employment, that he had positive orders not to take the car out of the garage at night unless orders were given to him to do so, that when it was taken out on this occasion it was without the defendant's knowledge or consent, that it was being driven purely on a matter of the chauffeur's own private concern, that on the night of the accident the chauffeur took the car out to pull in a broken-down car to earn some money for himself, and no evidence was offered to contradict or raise any issue of fact as to the foregoing testimony" (5 A.L. R.2d 209. See also Glassman v. Harry, 182 Mo.App. 304, 170 S.W. 403); (2) by undisputed evidence that the driver was on an errand personal to himself (5 A.L.R.2d 210. See also Ebers v. Whitmore, 122 Neb. 653, 241 N.W. 126); (3) by evidence that the car at the time of the accident was being driven without the knowledge or consent of the owner and about the driver's own affairs (5 A.L.R.2d 210. See also Hoffman v. Lasseff, 110 N.J.L. 122, 164 A. 293); (4) "by the defendant's positive testimony that his chauffeur had no authority to use the automobile for his own purposes, and that at the time of the accident he was so using it" (5 A.L.R.2d 210); (5) "by the driver's and the defendant owner's testimony showing that at the time of the accident the driver had not been given permission to use the truck as he did, that he was on his way to a store to pay a personal bill, that the owner was absent from the shop and knew nothing about the driver taking the truck, that he never authorized the use of the truck by him" for said purpose (5 A.L.R.2d 210. See also Pyle v Phillips, Tex.Civ.App., 164 S.W.2d 569); (6) "by clear, positive, and uncontradicted evidence on the part of the defendant own-

er showing that the driver, a salesman for the owner, was at the time of the accident driving the car for his own pleasure * * *" (5 A.L.R.2d 211. See also Maupin v. Solomon, 41 Cal.App. 323, 183 P. 198); and (7) "by undisputed evidence of the driver and the owner showing that the driver, a secretary and stenographer of the owner, was instructed not to use the defendant's cars unless she was sent upon some mission by the defendant, and that the driver on the day of the accident left the office—in the absence of the owner and without his knowledge and consent, got into one of the cars and started to go home to dress for a party—to which she intended to go after working hours." 5 A.L.R.2d 212. See also Craft v. Koonce, 237 Ala. 552, 187 So. 730.

In Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 767, our Supreme Court held that said presumption is not evidence but merely a rule of procedure which vanishes when positive evidence to the contrary is introduced and that it is not then to be weighed by the jury. In Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202, 204, Judge Hickman said:

"Such presumption, however, is not evidence, but is 'an administrative presumption' which vanishes when positive evidence to the contrary is introduced."

In Houston News Co. v. Shavers, Tex.Civ. App., 64 S.W.2d 384, 386 (Writ Ref.), the court said:

"* * * Evidence that the truck with which the injury was committed belonged to the news company and that it was being driven by one regularly in its employment, in the absence of evidence to the contrary, raised a presumption that such servant was engaged in the news company's business at the time of such collision. * * * This, however, is a mere rule of procedure and the presumption vanishes when positive evidence to the contrary is introduced. The presumption grows out of the fact

that not infrequently the evidence necessary to establish the character of the mission in which the servant was engaged is exclusively within the possession of the defendant. The effect of the rule is to 'smoke out' the defendant and to compel him to disclose the true facts within his knowledge. *When, however, he discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce other evidence or his cause fails.*" (Emphasis ours.)

This holding has been recently approved by our Supreme Court in Lumbermen's Lloyds v. Jones, 153 Tex. 379, 268 S.W.2d 909, 912, wherein judgment was rendered for the defendant.

■■ The only persons who possessed information relative to the question were the defendants. They all testified. The evidence of all the defendants that McWhorter was not at the time of the accident acting within the scope of his employment was positive, unequivocal and uncontradicted. The presumption, arising from the general employment of McWhorter and the fact that he was driving the Kellys' truck, that he was acting within the scope of his employment, no evidence that McWhorter was so acting being adduced, then vanished and there was no issue for the jury. If said presumption is not evidence and it vanishes when met by such defensive testimony, what difference does it make that such testimony came from the defendants. 5 A.L.R.2d 232, 233; 27 A.L.R. 2d 193; Lewis v. J. P. Word Transfer Co., Tex.Civ.App., 119 S.W.2d 106, 107 (Writ Ref.); Hill v. Staats, Tex.Civ.App., 187 S.W. 1039; Tex.Civ.App., 189 S.W. 85 (Writ Ref.); Hudson v. Ernest Allen Motor Co., Tex.Civ.App., 115 S.W.2d 1167, 1170 (Writ Dis.); Alfano v. International Harvester Co., Tex.Civ.App., 121 S.W.2d

**580**

466 (Writ Dis.); Texas News Co. v. Lake, Tex.Civ.App., 58 S.W.2d 1044 (Writ Dis.); Kuykendall v. United Gas Pipe Line Co., 5 Cir., 208 F.2d 921, 923; 27 A.L.R.2d 193. The result is that there was no evidence of an essential element of plaintiffs' cause of action, that is, that McWhorter was acting within the scope of his employment. The evidence, if admissible, that McWhorter after the accident said he was employed by Kelly Grain Company and that it was their truck did not alter the situation. Said statements were hearsay and could not be considered. See Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763; Hill v. Moore, Tex.Civ. App., 278 S.W.2d 472, 476; 163 A.L.R. 198; Stokes Bros. v. Thornton, Tex.Civ. App., 91 S.W.2d 756; Webb-North Motor Co. v. Ross, Tex.Civ.App., 42 S.W.2d 1086; Lewis v. J. P. Word Transfer Co., Tex.Civ. App., 119 S.W.2d 106 (Writ Ref.) and Bradley v. Texas & P. Ry. Co., Tex.Com. App., 1 S.W.2d 861, 864; 163 A.L.R. 198. The presumption was destroyed by such evidence coming from everyone who could know the facts. The presumption was not evidence. The only testimony relative to the question of scope of employment came from the defendants. It was all one way. It was all to the positive and definite effect that McWhorter was not within the scope of his employment. From whence then came any evidence that McWhorter was within the scope of his employment? In Dixon v. Cargill, Tex.Civ.App., 104 S.W.2d 101, 103 (Writ Ref.), we said:

"* * * where a plaintiff has the burden of proof on an issue and fails to make sufficient proof thereon to raise a question of fact for the jury, wholly defensive testimony relative thereto by the defendant, though uncorroborated, does not make an issue for the jury."

Contrary to appellees' contention, we hold that under our liberal rules the point decided was presented. The judgment is reversed and judgment is rendered for appellants.