Johnnie VAN CLEAVE, Individually,
etc. et al., Appellants,

v.

ROBERTSON TANK LINES, INC. et al.,
Appellees.

No. 15605.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 26, 1970.

On Motion for Rehearing May 7, 1970.

Rehearing Denied June 4, 1970.

Jamail & Gano, Joseph D. Jamail, John Gano, Houston, Warren Burnett, Odessa, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Royce R. Till, Sam W. Cruse, Rufus Wallingford, Houston, for appellees.

COLEMAN, Justice.

This is an appeal from a judgment for appellee, rendered by the trial court notwithstanding a jury verdict favoring the appellants. A truck owned by appellee was parked on a public street by Alfred Dean Donaghey, who was employed by appellee as a driver. Some hours later an automobile driven by Acie Van Cleave, crashed into the truck, the said Acie Van Cleave receiving injuries resulting in his death.

After having parked the truck Donaghey left it unattended while he visited with his father and visited taverns with his cousin. He returned to the truck after dark and started the motor in order to build up pressure. While waiting he went to a cafe nearby for coffee. The accident occurred during his absence.

The jury found that at the time Donaghey parked the truck on the paved portion of the highway he was acting in the scope of his employment. The jury also found that there were no signal lights burning on the truck, and that the driver's failure to turn on the signal lights when he returned to the truck after dark was negligence and a proximate cause of the collision. The jury further found that at the time the driver returned to the truck and started the same for the purpose of building up the air pressure and warming the engine, he was acting in the scope of his employment.

The trial court sustained the motion of Robertson Tank Lines, Inc., to disregard the answers to Special Issues 3 and 8, pertaining to scope of employment, and to enter a judgment in its favor. The judgment recites that the trial court found as a matter of law that the jury should have answered both issues "We do not."

Appellants have presented eight points of error, all based on the proposition that the trial court erred in disregarding the answers to Issues 3 and 8, and in holding as a matter of law that the driver was not in the course and scope of his employment at the time mentioned in those issues. Appellee has filed no cross-points.

If there is evidence sufficient to raise the issues on scope of employment submitted to the jury, the court erred in disregarding the answers made by the jury to these issues.

In Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057 (1940), the court said: " * * In order to render the master liable for the act of his servant, such act must be committed within the scope of the general authority of the servant, in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. * * * "

In determining whether there is evidence sufficient to raise the issues disregarded by the trial court, we can only consider the evidence and inferences therefrom favorable to appellants. Facts conceded or established as a matter of law must be considered. White v. White, 141 Tex. 328, 172 S.W. 2d 295 (1943). This rule, however, does not apply when we consider whether a party has introduced evidence sufficient to rebut or counteract a true presumption raised by operation of law.

Donaghey testified that after unloading he called Mr. Dunn, the manager of appellee's terminal in Corpus Christi, who instructed him to return to the terminal. He also testified that he could "gauge" his own time in returning and that he could eat or rest when he desired. He usually picked the route for a trip without supervision. He testified that there was a route to Corpus Christi other than the one he had used in bringing the load to Champion, which was slightly longer, but there was no evidence that he had taken this route at the time he drove to the Ram Gun plant, where his father was employed. He said that at the time he parked the truck he was working for appellee. His testimony that he was not engaged in doing anything for

his employer in making the drive to the Ram Gun plant, but was making the drive solely for the purpose of visiting his father, was clear and positive. His intention was a matter about which only he could testify. This testimony could not be readily controverted. There was a cafe near the Ram Gun plant. He parked the truck at about 11:30 o'clock A.M.

There is some evidence that when Donaghey parked the truck he was acting within the general scope of his authority, but it cannot reasonably be inferred that he acted in furtherance of the master's business, and for the accomplishment of the object for which he was employed. The testimony that he was working for appellee at the time he parked the truck did not constitute evidence even though admitted without objection. The statement was a "bare" conclusion without probative force. Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W. 2d 97 (1939).

From the map in evidence we can see that he was driving in a northerly direction. The route to Corpus Christi would lie in a southeasterly direction from Odessa. There can be no inference that Donaghey was engaged in driving the truck back to the terminal at the time he decided to park it near the Ram Gun plant.

While there is testimony that there was danger in leaving a truck parked in the nighttime without lights, since appellants have produced no evidence that the driver was acting in the course and scope of his employment and to further his employer's business and affairs when he parked the truck, the fact that he was acting to further the interests of his employer when he returned to the truck and started the motor in preparation for its removal to his father's house will not support a finding that he was then acting in the scope of his employment. It was incumbent on appellants to produce evidence indicating that it was not Donaghey's own wrong that placed the truck in the position of peril. We consider the question foreclosed by the case of

Southwest Dairy Products Co. v. DeFrates, 132 Tex. 556, 125 S.W.2d 282 (Tex.1939). There the Court said:

" * * * when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension. * * *

" * * * Of course, the purpose in the mind of Henderson while on the return trip was to take up the duties of his employment, but the master's liability does not rest alone upon the purpose in the mind of the servant. The test of liability is whether he was engaged in his master's business and not whether he purposed to resume it. It is equally true that Henderson owed the duty to his master of returning the car and resuming his employment and, while returning to the zone of his employment, he was discharging that duty, but that fact does not fix liability against the master. It was Henderson's own wrong in driving away that created the duty to return, and in returning he was but undoing that wrong. The return was referable to, and an incident of the departure. He was no more engaged in his master's business while returning to, than while departing from his path of duty."

It was admitted that Donaghey was employed by Robertson at the time of the collision, and that the tank truck involved was owned by Robertson. From these facts a presumption arises that Donaghey was acting within the course of his employment and in the furtherance of his employer's business at the time of the collision. M. K. Hall Company v. Caballero, 358 S.W. 2d 179 (Tex.Civ.App.—Eastland 1962, writ ref'd, n. r. e.).

The presumption is not evidence and is rebutted or dispelled by clear and positive evidence that the employee had abandoned his master's mission and was engaged in

one exclusively his own. Mitchell v. Ellis, 374 S.W.2d 333 (Tex.Civ.App.—Ft. Worth 1963, err. ref'd) ; Texas News Co. v. Lake, 58 S.W.2d 1044 (Tex.Civ.App.—Galveston 1933, writ dism.).

In Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057 (1940), the Supreme Court expressly approved the rule stated in 5 Am. Jur., p. 842, § 612, reading:

> " 'Again, if it is proved that the automobile in question was owned by defendant, and further proved that the driver was in the employment of defendant, a presumption then arises that such driver was within the scope of his employment when the accident occurred. The burden of proof is then placed on the defendant to prove that at the time of the accident the driver was not acting for him, but was using the machine for his own purposes, or outside the scope of the employment.' "

The only testimony relevant to the issues under discussion was given by Donaghey, the driver of appellee's truck. He was named a defendant in the action. All defendants were represented by the same lawyers. No cross-actions or pleas for indemnity or contribution were filed. Under these circumstances Donaghey was an interested witness. Carothers v. Moore, 183 S.W.2d 987 (Tex.Civ.App.—Galveston 1944) ; Employers Liability Assur. Corp. v. Groninger & King, 299 S.W.2d 175 (Tex. Civ.App.—Dallas 1956, writ ref'd, n. r. e.).

The testimony of an interested witness is not binding upon a jury. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. " * * * Where the evidence relied upon to support the contention that an issue has been conclusively established is the testimony of interested parties to the suit, we must apply the 'interested party' rule as developed in Texas * * *." Neal v. United States Fire Insurance Company, 427 S.W.2d 676 (Tex.Civ.App.—Corpus Christi 1968) ; Gammill v. Mullins, 188 S.W.2d 986 (Tex.Civ.App.—Eastland 1945, writ dism.). " * * * While there are exceptions to the rule, it seems settled that when testimony comes from an interested party and is of such a nature that it cannot be readily contradicted if untrue, an issue relating to the credibility of the witness is presented * * *." James T. Taylor and Son, Inc. v. Arlington Ind. School Dist., 335 S.W.2d 371 (Tex.1960).

The principal exception to the rule is stated in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1943), as follows:

> "It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. But there is an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law. Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., Tex.Civ.App., 96 S.W.2d 788, and numerous authorities there cited * * *. The opinion in the case just cited correctly states the law."

It is necessary, therefore, to review the testimony of Alfred Dean Donaghey to determine whether it is "clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon."

He testified that he was employed by Robertson Tank Lines on May 5, 1966, when he parked the truck on the Andrews Highway. He was not violating any rules of his employer when he parked the truck. He had instructions from his supervisor to "gauge" his own time in returning the truck back to Corpus Christi. He could rest when he was tired. He was expected to come back to the terminal after the truck was unloaded. He could stop the truck when he thought he needed to rest. He

had decided to visit his father when he stopped on the Andrews Highway. He did not have permission to visit him.

The truck was owned by Robertson Tank Lines and had a sign containing that name on its side. Prior to parking the truck he had driven it to Champion Chemical. He stood by the truck for about an hour while it was being unloaded. This was a part of his duty. He reached Champion Chemical about eight o'clock that morning. After the truck was unloaded he reported back to the terminal by telephone. He talked to Mr. Dunn. He learned that he "was supposed to go on back to Corpus Christi." He did not remember what Mr. Dunn did say. He had previously testified by deposition that he was to bring the truck back the same day, "after if I wanted to rest or anything." He didn't remember whether they told him to come back the same day or not. They expected him to come back after he unloaded.

It was his usual custom to take his time in making such trips, resting when rest was needed, and to use his own discretion about the route he followed in returning to the terminal in Corpus Christi. He received no instructions about the streets he had to use. He could choose the route for the trip back to Corpus Christi. There was no doubt in his mind but that at the time he parked the truck on the Andrews Highway at ten or ten thirty o'clock in the morning he was still working and on the job for Robertson Tank Lines.

It was daylight when he parked the truck. He turned his blinker lights on. He believed, to the best of his knowledge, that he did. He usually turned the blinker lights on when he parked the truck. It would not have been dangerous to leave the truck parked without lights in the daytime, but it would be dangerous at night.

The truck was parked near the plant where his father worked. He visited with his father. He did not remember just how long. A cousin came by and picked him up and they went to a lounge where they drank a few beers. He returned to the truck about 11:30 that night to start the engine. He thought his blinker lights were on, but he couldn't be sure. He couldn't remember whether he checked to see if they were on or not. He started the engine so that it would warm up and build up the pressure. He thought he turned on the clearance lights at that time. On his deposition he had stated that he couldn't say for certain that he actually had any factual recollection of whether or not he did anything with respect to the lights. He was charged with the offense of leaving a parked truck on the highway without lights, and he plead guilty to this offense. He answered "yes, sir", to the question: "We can just assume your lights were not on that truck at the time this happened, can't we?"

He testified that he was not sure that the truck was parked outside the city limits. He was not "real sure where the city limits are." At the time of the trial he couldn't say that he knew it was outside the city limits. He had lived in Odessa and had worked at Ram Gun before working as a truck driver.

After he started the engine he went to a nearby cafe for coffee. At this point in his testimony he stated that there were no lights on the truck, and that he didn't turn the lights on. There were reflectors on the back of the truck. He returned to the truck after the collision. It was then after midnight. The damage to the truck was light, but the rear wheels were knocked out of alignment. He reported the accident either to Mr. Stratman or Mr. Dunn. He was fired the next day. Another driver was sent to Odessa for the truck and he went back to Corpus Christi as a passenger. He was paid on a commission basis and received his full commission for this trip although he was not permitted to drive the truck back to the terminal.

He testified that at the time he was hired by Robertson Tank Lines, he told about some of his past traffic violations and accidents, but he didn't remember

whether he told about all of the violations. He didn't remember whether he was questioned about them. He thought that he would have mentioned them had he been asked. He didn't remember whether he told them about a warning letter he had received. He did not remember getting the warning letter. He had forgotten about it. "I am not real sure." He was given a pre-employment lie detector test.

He could sleep where he wanted to and was not required to sleep in the truck sleeper. He could sleep at his father's house as he had done the night before the accident. His choice of a place to sleep depended on where he was when he decided he needed rest. He was not supposed to work more than ten hours without stopping for rest, including time used in loading and unloading. It normally takes ten to twelve hours to drive from Odessa to Corpus Christi. He could not have driven all the way back to the terminal without stopping to rest. Where he stopped to rest and how long he rested would have been up to him. When he had relatives in a town on his route he has stopped for visits while working for other companies.

After drinking the coffee he went back to the truck for the purpose of driving it to his father's house where he planned to spend the night. He did not know whether he had been instructed not to spend the night. He did not remember whether he thought he could do what he felt like doing with regard to rest because it had been "some time ago". He did not think he had been instructed to return by a certain time on a certain date.

When he returned and started the truck he did it so that he could move the truck off the highway with the ultimate goal of getting it back to Corpus Christi. He answered, "yes, sir," to the question: "You were in fact about their business when you went out there to fire that truck up to move it off the highway, were you not?" He was going to move the truck and take a nap.

On May 3, 1966, he was instructed by the dispatcher, Mr. Dunn, or Mr. Stratman, to load chemicals at Bishop, Texas, and take them to the Champion plant near Odessa. He took the most direct route from Bishop to Odessa, through San Angelo. He was asked: "Were you ever instructed you didn't have to take a strict route, you would follow a direct route, the most direct route?" He answered: "Yes, sir." He was to follow the normal and most direct route. After he unloaded he called the dispatcher to determine whether they had some other place for him to pick up a load so that he would not have to go back empty. He was informed that he had no other place to go to pick up a load, and was instructed to come back to the terminal.

He identified a map of Odessa, and marked the route he had followed on it. He testified that if he followed the most direct route to Corpus Christi from the place on the Andrews Highway where the accident happened, he would go back the way he had come to Highway 80. There was another route, however, which would be "just a little further". He intended to turn around and go back by way of Highway 80.

When he returned to Odessa after unloading, there was nothing connected with his job that he intended to do. He had nothing to load or unload. The vehicle needed no repairs. He was not going back into Odessa to rest. He had left nothing at his father's house. It was ten or twelve miles from Highway 80 to the Ram Gun plant. No one told him he couldn't make this trip. No one knew he intended to do so. He knew he was not supposed to go out of his way to visit. He was doing nothing to further his employer's interests when he drove "back across the highway in the other direction" to visit his father. When he went back to the truck that night, he knew that he had violated Mr. Dunn's instructions and would probably be fired.

After the accident he identified himself to the investigating officers as the driver who had parked the truck. He was arrest-

ed and taken to jail. He "believed" he talked to someone at Robertson that night. He did not remember the conversation. He did not remember what he told the investigating officers.

He had been instructed not to drive while drinking. When he went to get coffee, he intended to stay awhile before driving to his father's house to sleep off the effects of the afternoon. He remembered the condition of the trailer after the accident and identified photographs.

He testified that the trailer was equipped with a signal light, a stop light, a tail light, reflectors with green lenses, possibly running clearance lights, about seven lights and two reflectors in all. The reflectors were about four inches in diameter. All of these lights were on the rear of the trailer and were red in color.

On redirect examination he admitted that he did not know just how far it was from Champion to Ram Gun. He was making a slight detour to make a short visit with his father. He did not intend to go with his cousin to drink beer.

When he left Corpus Christi for Odessa, he drove through San Antonio and San Angelo. He did not know that this is the most direct route between Corpus Christi and Odessa. It is a good highway and the one he had used before. He used his own judgment and traveled the way he thought would be the best. He could have been 40, 50, or 60 miles off of the most direct route at times and would not have known it.

When he returned to the truck from the tavern where he had been drinking, he had no personal reason to return. He was with his cousin and another man and had a ride to his father's house if he had wanted it. From a purely personal standpoint it made no difference whether he left it on the highway or took it to his father's house. He did not know whether he considered the fact that it would be in his employer's interest to remove the truck from the highway. He thought the truck was parked all right. He was going to take it to his dad's house so he could leave the next morning. He knew it was quite dangerous to leave a truck parked on the paved portion of the highway with no lights burning. He didn't know whether it was dangerous to leave the truck at night without lights burning at the place where he had parked it.

Robertson did not tell him the reason he was fired and did not tell him that he was not on the job the night of the accident, but he was not doing anything for them at the time.

The director of personnel for Robertson Tank Lines testified that their drivers are frequently out alone for several days. The only supervision they have is "road engineering service by an insurance company, safety department, things like that. From time to time they make their own decisions as to routes, when to stop, where to stop and that sort of thing." He brought Donaghey's personnel file, which was kept under his supervision. The manager of the terminal was Marvin Dunn, who is retired and lives somewhere in the vicinity of Corpus Christi. He had made no effort to contact Mr. Dunn. The file does not indicate why Donaghey's services were discontinued; ordinarily the personnel files would show whether an employee was discharged, retired, or voluntarily discontinues his work. He did not know and could not say whether appellee was still paying Mr. Donaghey.

After consideration of all of Donaghey's testimony we cannot say that it was so clear, direct, positive, and free from contradictions, inaccuracies, and circumstances tending to cast suspicion thereon, as to establish as a matter of law that at the time appellee parked his truck on the Andrews Highway, he had completely departed from his work to accomplish some purpose of his own not connected with his employment. Anchor Casualty Company v. Bowers, 393 S.W.2d 168 (Tex.1965).

It must be noted that the vital evidence with reference to the mission which prompted his trip is not subject to ready contradiction. Ordinarily an issue relating to his credibility would be raised. James T. Taylor and Son, Inc. v. Arlington Ind. School Dist., supra.

In Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763 (1940), opinion by Smedley, Commissioner, the Court states:

"There is conflict in the decisions as to the degree and character of proof necessary to rebut or overcome such presumption. By some it is held that the presumption disappears when met by positive proof or substantial proof or by evidence which the jury has the right to believe or by the uncontradicted testimony of the defendant. Others hold that the presumption is not overcome by the testimony of the defendant alone or by the testimony of interested witnesses or by evidence which the jury has the right to disbelieve. See the authorities discussed in notes, 42 A.L.R. 907–908; 74 A.L.R. 954–958; 96 A.L.R. 637–640; McCormick & Ray's Texas Law of Evidence, pp. 51, 52, Sec. 34. The authorities are, however, in almost complete agreement that the presumption is conclusively overcome by clear, positive and undisputed evidence. See the Texas cases, supra, and the decisions in the A.L.R. notes above cited."

There are suggestions in more recent cases that "any suggestion by the evidence" that the act on which the cause of action is based occurred while the servant was on a purely personal errand of his own must be countered and overcome by evidence. Mitchell v. Ellis, 374 S.W.2d 333 (Tex.Civ. App.—Ft. Worth 1964, error ref.).

The testimony of an interested witness to facts showing that he was on a mission of his own not related to his employment is sufficient to rebut the presumption being considered even though such testimony alone might not be sufficient to authorize an instructed verdict. Since the presumption is rebutted by such testimony, the burden remains on the plaintiff to present evidence sufficient to raise an issue of fact as to whether the servant was acting to further his master's business at the time the negligent act occurred. Appellant did not meet the burden. There was no evidence on the issue favorable to appellants' position. The trial court did not err in disregarding the issues on course and scope of employment, and in entering a judgment for appellee notwithstanding the verdict. Lumbermen's Lloyds v. Jones, 153 Tex. 379, 268 S.W.2d 909 (1954); Mosqueda v. Albright Transfer & Storage Company, 320 S.W.2d 867 (Tex.Civ.App.—Ft. Worth 1958, writ ref., n. r. e.); Kelly v. Green, 296 S.W.2d 576 (Tex.Civ.App.—Eastland 1956, writ ref., n. r. e.); Hudiburgh v. Palvic, 274 S.W.2d 94 (Tex.Civ.App.— Beaumont 1954, writ ref., n. r. e.); Gammill v. Mullins, 188 S.W.2d 986 (Tex.Civ.App. —Eastland 1945); Pyle v. Phillips, 164 S.W.2d 569 (Tex.Civ.App.—Dallas 1942); Houston News Co. v. Shavers, 64 S.W.2d 384 (Tex.Civ.App.—Waco 1933, error ref.).

Riverbend Country Club v. Patterson, 399 S.W.2d 382 (Tex.Civ.App.—Eastland 1965, writ ref., n. r. e.), and M. K. Hall Company v. Caballero, 358 S.W.2d 179 (Tex.Civ.App.—Eastland 1962, writ ref., n. r. e.), are relied on by appellants to support their position. In each of these cases there was evidence that the employee was acting within the course and scope of his employment, and in furtherance of the employer's business. It was not necessary to rely solely on the presumption to support the jury finding.

Affirmed.

### On Motion for Rehearing

In our original opinion in this case we held that the testimony of an interested witness to facts showing that he was on a mission of his own not related to his employment was sufficient to rebut the

presumption that he was acting in the course and scope of his employment, and was acting to further his master's business, such presumption having been raised by admissions and evidence that the witness was employed by appellee as a truck driver and drove a truck owned by appellee to the place of the collision. We also held that there was no evidence that the driver was acting to further his master's business at the time he parked the truck on the side of the highway. In reaching these conclusions we were relying on Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763 (1940), where the court said:

"Proof that the truck was registered in the name of Empire Gas & Fuel Company raised the presumption that it was owned by that company, and if evidence had shown that Warren Angel, the driver of the truck, was in the employ of the Empire Company, the further presumption would have been raised that such driver was acting within the scope of his employment. Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057, 1058. There is no evidence in the record that Warren Angel was ever employed by the Empire Company. We need not determine in this case whether, from the operation of the truck on the highway under registration in the name of Empire Gas & Fuel Company, the presumption arises that the driver was an employee of that company, for, on the same principle that makes registration evidence, prima facie, of ownership, it seems that the issuance of the permit in the name of Empire Gas & Fuel Company to transport the ditching machine in the truck raised the presumption that it was being transported for that company.

"It is settled in this state, and by the weight of authority elsewhere, that such presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced. Lewis v. J. P. Word Transfer Co., Tex.Civ.App., 119 S.W.2d 106; * * *

"The presumption is a true presumption, which has been defined as 'a rule of law laid down by the courts which attaches to facts certain procedural consequences'. McCormick & Ray's Texas Law of Evidence, Sec. 32, p. 48. It places on the party against whom it operates the burden of producing evidence. It is not evidence and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict. McCormick & Ray's Texas Law of Evidence, pp. 51, 58, Sections 34, 37; 20 Amer.Jur. pp. 170, 171, Sec. 166."

The decision in that case, however, has been clarified by the opinion of the court in Southland Life Insurance Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854 (Tex. 1942), where the court said:

"We are not in accord with the holding of the case of National Aid Life Ass'n v. Driskill, Tex.Civ.App., 138 S.W.2d 238, cited by defendant, to the effect that it is the function of the court (rather than the trier of the facts), when there are opposing inferences (each supported by substantial probative evidence), to determine which inference is more reasonable or probable. We hold that an *inference* established prima facie (as in the present case) is overcome, together with the evidentiary facts tending to establish it, *only when the evidence tending to support the contrary inference is conclusive, or so clear, positive and disinterested that it would be unreasonable not to give effect to it as conclusive.* Authorities cited supra; also Empire Gas & Fuel Co. v. Muegge, supra; Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 136 S.W.2d 207; East Texas Fire Ins. Co. v. Perkey, 89 Tex. 604, 35 S.W. 1050; Western Union Tel Co. v. McDavid, 103 Tex. 601, 132 S.W. 115; American Central Ins. Co. v. Heath, 29 Tex.Civ.App. 445, 69 S.W. 235. As stated tersely in the Stanolind Oil case

[134 Tex. 332, 136 S.W.2d 209], 'prima facie evidence and presumptions of fact disappear when the true facts are *conclusively shown by other evidence*'; or, as stated in the Empire Gas case opinion [135 Tex. 520, 143 S.W.2d 767], *after it is shown the opposing evidence was clear, positive and uncontradicted,* 'it is settled in this state, and by the weight of authority elsewhere, that such presumption is * * * an "administrative assumption" which "vanishes" * * * when positive evidence to the contrary is introduced.' In other words, presumptions, when controverted by facts, disappear, as such, and cannot be weighed *as evidence* against such facts." (emphasis added)

In that case the court also stated:

"It is not contended by the company that the evidence of the receipt of the letter adduced by plaintiff is not substantial or that it does not tend to support a fact finding that it received the letter within the grace period. The company's contention, reduced to proposition form as substantially stated in the application for writ of error, is that the 'presumption of fact that the mailed letter was received' vanished when its evidence tending to show the letter was not received, was introduced. Such is not the majority rule, and is certainly not the rule in this State. Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763; Langlitz v. American Nat. Ins. Co., Tex. Civ.App., 146 S.W.2d 484, writ dismissed; McCormick & Ray, pp. 58–9, sec. 37, and other cases above cited.

"We agree with the company's contention that a presumption, as such, is not evidence and that it vanished as such in view of the opposing evidence; but we do not agree that the evidentiary facts upon which it was established, could no longer be considered by the trier of the facts. Wigmore on Evidence, 2d Ed., sec. 2491.

" * * *

"American Jurisprudence, Vol. 20, sec. 166, states the general rule thus: 'The facts which gave rise to a presumption, as distinguished from the presumption itself, are evidentiary; those facts, *when established by evidence,* remain in the record and may be properly considered by the jury *as they tend to sustain a finding of fact* presumed, no matter what other facts the record may reveal. It is not the presumption or inference that the jury considers in such cases, but only the facts and whatever inferences flow therefrom.'

"The prima facie case of due receipt of the letter made out by plaintiff in the present case is not *conclusively rebutted* by the company's evidence tending to establish it was not received; nor is such evidence *so clear, positive and disinterested* as to overcome (other than as a rule of law) the presumption of fact in the insured's favor."

On reexamination of the case we conclude that we were correct in holding that the testimony of the driver constituted "substantial evidence", and was sufficient to rebut the presumption, but that we were in error in disregarding the facts from which the presumption arose as a permissible basis for an inference that the driver was acting in the furtherance of his master's business at the time he parked the truck. Re Estate of Woods, 374 Mich. 278, 132 N.W.2d 35, 5 A.L.R.3d 1; Anno. 5 A. L.R.3d, Presumption—Controverting Evidence, p. 22 et seq. The trial court erred in disregarding the answer of the jury to Special Issue No. 3, since there was evidence supporting the answer returned.

After parking the truck the driver embarked on a mission of his own which ended when he returned to the truck and started the truck for the purpose of building up pressure. Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282 (1939), is not applicable to this case under the facts as found by the jury. The court erred in disregarding the answer made by the jury to Special Issue No. 8.

The motion for rehearing is granted. The judgment of the trial court is reversed and the case is remanded to the trial court with instructions to enter a judgment on the verdict of the jury.