834

**WOLVERTON et al. v. HARTFORD ACCI-
DENT & INDEMNITY CO.**

No. 6239.

Court of Civil Appeals of Texas. Amarillo.
Oct. 13, 1952.

Rehearing Denied Nov. 17, 1952.

Cade & Bowlin, Lubbock, for appellants.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellee.

MARTIN, Justice.

Eddy Lee Huff, deceased, was employed by the Southwestern Public Service Company as a lineman. Upon completion of the work week at Guymon, Oklahoma on Friday, November 24th, he signed the time sheet and was paid for his work. Huff's crew had instructions to leave Guymon on Monday of the next week and proceed to Carlsbad, New Mexico by company truck. The company allowed 15 hours work time for the move—8 hours straight time and 2 hours for time and a half on Monday and 5 hours straight time on Tuesday. The company truck transporting the crew to Carlsbad left Guymon on Monday morning at the usual work hour.

Eddy Lee Huff owned an automobile and two other members of the crew also owned automobiles. The members of the crew were not obligated to ride the company truck but could proceed to Carlsbad as they might choose and were to report there by Tuesday noon. All members of the crew were allowed 15 hours time as paid the members of the crew traveling to Carlsbad by company truck.

After completing the work week on Friday, Huff and the other two members of the crew owning automobiles met in Guy-

mon and after drinking some beer proceeded on the highway together—each crew member driving his own automobile. They stopped at Dumas and drank some beer and later stopped in Amarillo where Huff drank another bottle of beer. Huff placed six bottles of beer in his car at Amarillo and the three men parted company there. Huff passed one of these men on the highway to Canyon and was not seen by either of them following that time.

About 2 o'clock in the morning of Saturday, November 25th, Eddy Lee Huff's automobile collided with another car approximately 2½ miles south of Canyon while he was driving north on the highway toward such town. The testimony of his mother, Mrs. H. L. Wolverton, is that Huff, while driving his automobile toward Canyon, sideswiped a car, bounced off the car and ran into a tree causing injuries which resulted in his death that afternoon in the hospital.

Appellant, Mrs. H. L. Wolverton, sought workman's compensation insurance from appellee, Hartford Accident & Indemnity Company, insurer, for the death of her son on the theory that he was killed while in the scope of his employment with the Southwestern Public Service Company, insured. On trial of the case, the jury found that Eddy Lee Huff was not acting within the scope of his employment by the company in the capacity of a lineman at the time of his death. Appellant's appeal is primarily concerned with the contention that there is no evidence to support this finding of the jury and that the trial court, as a matter of law, should have rendered judgment for her notwithstanding the verdict of the jury. Appellant's five points could be disposed of under this issue but will be discussed separately.

Appellant's first and second points raise the issue that there is no evidence to support the jury verdict that Eddy Lee Huff was not acting within the scope of his employment at the time of his injury, and that the trial court should have granted appellant a judgment notwithstanding the jury verdict. These points require an examination of the evidence in the cause un-der the applicable rules. Texas Employers Ins. Ass'n v. Knipe, Tex.Sup., 239 S.W.2d 1006.

The undisputed evidence discloses that the work week terminated on Friday, November 24th at 5 o'clock, and that the following work week began Monday morning at 8. It is likewise undisputed that only 15 hours time was allowed the crew as to the trip to Carlsbad and that only 15 hours of work time accrued from Monday morning at 8 until Tuesday at noon, taking into consideration time and a half paid on Monday. It is also undisputed that more than 15 hours of time elapsed between Friday afternoon at 5 o'clock and the following Tuesday at noon. Since it is also undisputed that Huff was receiving only 15 hours of work time during that period of time elapsing between Friday afternoon at 5 and the following Tuesday at noon, he either was not within the scope of his employment by the Southwestern Public Service Company from Friday afternoon at 5 until Monday morning at 8, or he was receiving a far different compensation rate from that received by the other members of the crew.

Ross Gidden, a fellow employee of Huff, who also drove his car on the trip, called as a witness by appellant, testified on direct examination that they were to report to Carlsbad and "that was after they finished the job at Guymon." Gidden further testified that Huff was killed on or about the morning of the 25th of November after they "quit or finished the job at Guymon at quitting time on Friday." This witness further testified on direct examination, "Yes, we were paid for Monday and Tuesday." He further answered to direct interrogation by appellant's attorney: "Q. They didn't require you to drive from Guymon, beginning Monday morning, did they? A. That is the way the pay started." This witness further testified that the normal work week was Monday through Friday— 5 days a week; that a time sheet was signed on completion of the day's work, and that on the signing of such time sheet the employees were not under the supervision of any one and had the right to go to honky

tonks or wherever in the world they wanted to go. Huff signed his time sheet on Friday afternoon and was paid for his week's work. Gidden further testified they were not paid any car expense for the trip from Guymon to Carlsbad and were not paid any wages for Saturday, November 25, 1950, and that had they worked on the 25th and 26th they would have signed a time sheet.

An examination of the testimony of officials of the company in charge of the work and direction of the employees on the crew reveals that the foreman and crew were to leave Guymon, Oklahoma, at the regular work time Monday morning and were to proceed to Carlsbad, New Mexico, and that time was allowed all employees for their regular work week beginning Monday morning and ending Tuesday at noon. This testimony is corroborated by the payments made to all crew members, by the time sheets and by the testimony of workmen who made the move. The testimony further shows that the Southwestern Public Service Company had no jurisdiction over the workmen after the crew finished work on Friday afternoon and that the members of the crew were free to do as they saw fit until Monday morning when they reported back to work.

▋ Under any view of the evidence, it is undisputed that Huff was to go to Carlsbad, New Mexico. It is likewise undisputed that at the time of the collision Eddy Lee Huff was not going toward Carlsbad but was going North towards Canyon—the opposite direction from Carlsbad. Some attempt was made to prove that Huff was going back to Canyon to fix a flat tire. The party testifying on this issue was a brother of the appellant and he also testified that he did not smell any alcoholic beverage on Huff's breath prior to his death. This witness' testimony as to the condition of the tires on Huff's car is that only the left front tire was down and that the tube was "chewed quite badly." He further testified that the rim marks on the tire "showed it was running flat." If Huff was going back to Canyon to have a flat tire fixed, appellant's witness reveals Huff as driving

his automobile on the highway on this flat tire. The testimony that Huff did not have any odor of intoxicants on his breath at the hospital and the finding of the jury that Huff was not intoxicated at the time of the collision, do not comport with the theory that he was driving his "new Mercury" automobile down the highway at a high rate of speed on a flat left front tire which tire he was driving to Canyon to be repaired. It is a more reasonable presumption under the facts that when Huff's automobile bounced off a car and ran into a tree that the tube of the left front tire was punctured or blown out. The evidence in the record does not support the theory that Huff was going back to Canyon to fix a flat tire.

▋ This cause is well within the rule found in Texas Employers' Ins. Ass'n v. Herron, Tex.Civ.App., 29 S.W.2d 524, 528, cited by appellant: "The issues under consideration were therefore properly submitted to the jury." The trial court also properly refused to enter judgment non obstante veredicto for the appellant. Appellant's first and second points are overruled. 57 C.J.S., Master and Servant, § 531 p. 150, note 52; American General Ins. Co. v. Williams, 149 Tex. 1, 227 S.W.2d 788, syl. 6; Texas Employers' Ins. Ass'n v. Knipe, supra; Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192.

▋ The jury finding that Huff was not acting within the scope of his employment at the time of his injury rendered immaterial any issue as to lump sum settlement and appellant's third point is overruled.

▋ Appellant's fourth and fifth points are briefed together and assert that the trial court erred in permitting the witnesses to testify as to the contract of employment and as to their opinions and interpretations of the same and conclusions as to the effect thereof. Under such points, the essential contention is that the time slip marked "Moving from Guymon to Carlsbad" was the only evidence admissible as to the contract or duties of Huff and that employees of the company, and other witnesses, were incorrectly permitted to testify as to the instructions as to the move to Carlsbad and other facts as to the employ-

ment of the deceased. It must be recalled that appellant asserts that Huff had an individualistic type of contract with the company covering his driving to Carlsbad. On this issue the evidence of which appellant complains was properly admitted as a description of the details and nature of Huff's employment under the ruling in Texas Employers Ins. Ass'n v. Monroe, Tex.Civ.App., 216 S.W.2d 659, syl. 5.

The judgment of the trial court is affirmed.