LUMBERMEN'S LLOYDS V. ROY JONES ET AL

No. A-4604. Decided June 16, 1954.
Rehearing overruled July 7, 1954.
(268 S.W. 2d Series 909)

*James R. Strong, Jr.,* of Carthage, and *Collins, Garrison, Renfrow & Zeleskey,* of Lufkin, for petitioner, Lumbermen's Lloyds.

The trial court erred in overruling petitioner's motion for an instructed verdict, and the Court of Civil Appeals erred in failing to so hold, because of the presumption arising from the facts and evidence that deceased was an employee of Herpin and not an employee of Corbett. Broaddus v. Long, 135 Texas 353, 138 S.W. 2d 1057; Empire Gas & Fuel Co. v. Muegge, 135 Texas 520, 143 S.W. 2d 763; Simonds v. Stanolind O. & G. Co., 134 Texas 332, 136 S.W. 2d 207.

*Fred Whitaker*, and *L. P. Gaston*, both of Carthage, for respondent, Roy Jones and wife.

MR. JUSTICE SMITH delivered the opinion of the Court.

Respondents filed this suit to recover workmen's compensation benefits. They alleged that their son, Jessie Mayes Jones was accidentally killed on November 30, 1951, while employed by R. A. Corbett, doing business as R. A. Corbett Transport of Lufkin, Texas. Petitioner admitted that the deceased was an employee of R. A. Corbett on November 29, 1951, and had been for a period of two months prior thereto, but alleged in its answer that the deceased changed his employment and began working for A. W. Herpin Truck Line, Inc., on November 30, 1951, the date of his death.

The petitioner filed a motion for an instructed verdict. The motion was overruled, and issues were submitted to a jury. The jury reached the conclusion that the deceased, Jessie Mayes Jones, was an employee of R. A. Corbett, doing business as R. A. Corbett Transport, and was acting in the course of such employment at the time of his death. The jury, in answer to Issues 3 and 4, found that the deceased was not an employee of A. W. Herpin Truck Lines, Inc., and was not acting within the scope of employment for said company on the date of the accident and death.

The petitioner's motion for judgment non obstante veredicto was overruled. Its motion for new trial was likewise overruled.

Petitioner's motion for instructed verdict, motion for judgment non obstante veredicto, and motion for new trial presented its contention that there was no evidence to support the answers of the jury to the effect that the deceased was engaged in the course of his employment and was an employee of R. A. Corbett, doing business as R. A. Corbett Transport, and was not engaged

in the course of his employment and was not an employee of A. W. Herpin Truck Lines, Inc. The motion for new trial presented the further contention that the trial court erred in excluding from the evidence a lease contract from R. A. Corbett to A. W. Herpin Truck Lines, Inc., covering the truck driven by the deceased at the time of the accident, and also erred in excluding from the evidence a contract between A. W. Herpin Truck Lines, Inc., and Stanolind Oil & Gas Company. This contract was an agreement concerning the transportation of petroleum products within the State of Louisiana. The Court of Civil Appeals for the Sixth Supreme Judicial District held that the trial court committed error by excluding the proffered contracts and reversed and remanded the cause for a new trial. 264 S.W. 2d 759.

Both parties have filed a petition for writ of error. This Court granted the petition of Lumbermen's Lloyds. The point upon which the writ of error was granted is, as follows: "The trial court. erred in overruling petitioner's motion for an instructed verdict and the Court of Civil Appeals erred in failing to so hold." Respondents' petition for writ of error was granted in accordance with this Court's established procedure of granting all petitions in the event one has been granted. Respondents contend that the Court of Civil Appeals was in error in reversing and remanding the case.

For convenience, we shall hereafter refer to the parties as "Lumbermen's," "Jones," "Corbett," "Herpin" and "Jessie."

We sustain Lumbermen's point. Therefore, the point presented by Jones becomes immaterial.

The deceased began working for Corbett about the 15th of September, 1951, and continued in this employment until the end of the day of November 29, 1951. J. D. Rook testified that he was Terminal Manager for Corbett and Herpin, and that a part of his duties was to "hire" employees for both concerns. R. A. Corbett was the owner of Corbett and was a substantial stockholder in Herpin. Rook employed the deceased, Jessie Mayes Jones ,to work for Corbett; that Jessie was hired to drive a truck and that his work was principally performed in Texas, but, that he made a few trips into Louisiana. The evidence further conclusively shows that shortly after entering upon his employment with Corbett a request was made by the deceased that he be employed by Herpin. His reason for the suggested change in employment was the fact that Herpin paid its drivers a 20% com-

mission, whereas, Corbett only paid 17½%; that on several occasions thereafter, the request for transfer or change in employment was renewed; that on the evening of November 29, 1951, Rook called Jessie by telephone informing him that there would be an "opening" with Herpin the next morning; that Jessie accepted the proposed employment; that he was put on Herpin's payroll, and was paid by Herpin for his services on November 30, 1951; that Jessie appeared the next morning; that he was told when to start to work, what truck, and he would be working, not in Texas, but would be working in Louisiana altogether for A. W. Herpin Truck Lines, Inc., and also went over the papers, and explained the loading and unloading papers, what kind of invoices, and the driver filled out the invoices, showing where he loaded and where he unloaded; that Jessie left driving "Truck No. 27," and carrying A. W. Herpin Truck Lines, Inc., invoices; that the truck had A. W. Herpin Truck Lines signs applied on each door, and that the Herpin signs had been on the truck for "quite some time." Rook left Jessie in Louisiana and returned to Texas, but before leaving, Jessie loaded his truck with oil at Greenwood Field, Louisiana, to be delivered to anther point in Louisiana; Herpin did not have authority from the Interstate Commerce Commission to operate outside of the State of Louisiana and did not operate in Texas. Corbett's certificate of convenience and necessity permitted him to operate within the State of Texas, and he had a permit from the Interstate Commerce Commission to operate across the state line between Texas and Louisiana, but he did not have authority to transport petroleum products from one point in Louisiana to another point in that state. The evidence further shows that on November 30, 1951, Truck No. 27 had a sign on each end of the truck; that the signs were R. A. C. or R. A. C. Corbett R. A. C. in addition to the A. W. Herpin Truck Lines, Inc., signs; and "that it had a Texas license on it and also bore a Texas Railroad Commission permit."

Jones relies on presumptions arising from the evidence that the truck was owned by Corbett and registered in his name; that tre truck had the initials "R. A. C." or "R. A. C. CORBETT R. A. C." on it; that Jessie was originally employed by Corbett and continued to work for him until November 29, 1951, and that Rufus Jones saw Jessie in Texas about an hour and a half or two hours before his death to establish that (1) Jessie was an employee of Corbett on November 30, 1951, and (2) that Jessie was working in the course of such employment at the time of his death. The evidence just related raised a presumption that Jessie was an employee of Corbett and was acting within the scope of

such employment. This evidence would support the verdict of the jury unless refuted by clear, positive and undisputed evidence. The evidence in this cause clearly shows that Corbett discharged his burden of proof and established by the undisputed evidence that Jessie was not his employee on November 30, 1951, and was not performing work in the course of his employment, but, to the contrary, was an employee and as such was working in the course of his employment for Herpin at the time of his death. Lewis v. J. P. Word Transfer Co., Tex. Civ. App., 119 S.W. 2d 106, writ refused; Empire Gas & Fuel Co. v. Muegge, 135 Texas 520, 143 S.W. 2d 763; Houston News Company v. Shavers, Tex. Civ. App., 64 S.W. 2d 384, writ refused; McCormick & Ray, Texas Law of Evidence, pp. 51, 58, Secs. 34, 37.

In the case of Houston News Company v. Shavers, supra, Judge Alexander, speaking for the Court of Civil Appeals at Waco, said:

"* * * Evidence that the truck with which the injury was committed belonged to the News Company and that it was being driven by one regularly in its employment, in the absence of evidence to the contrary, raised a presumption that such servant was engaged in the News Company's business at the time of such collision. * * * This, however, is a mere rule of procedure and the presumption vanishes when positive evidence to the contrary is introduced. The presumption grows out of the fact that not infrequently the evidence necessary to establish the character of the mission in which the servant was engaged is exclusively within the possession of the defendant. The effect of the rule is to 'smoke out' the defendant and compel him to disclose the true facts within his knowledge. *When, however, he discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce other evidence or his cause fails."* (Emphasis added.)

The petition for writ of error was refused and the holding was later cited with approval by this Court in the case of Empire Gas & Fuel Co. v. Muegge, supra.

Jones produced no evidence contrary to the undisputed evidence offered by Lumbermen's that Jessie was an employee of Herpin and not of Corbett on November 30, 1951. He, therefore, failed to discharge the burden of proof required of him. The evidence that Jessie was an employee of Herpin and not of Cor-

bett was given by Rook, the Terminal Manager for both concerns. He was in a position to know the facts. There is nothing in the record to indicate that he had any motive other than to disclose the true facts within his knowledge.

The judgments of the trial court and the Court of Civil Appeals are reversed and judgment is rendered in favor of petitioner, Lumbermen's Lloyds, that respondents-petitioners, Roy Jones, et al, take nothing.

Opinion delivered June 16, 1954.

Rehearing overruled July 7, 1954.