**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**Jennie Mae PRESTON, Appellee.**

**No. 14448.**

Court of Civil Appeals of Texas.

San Antonio.

Jan. 26, 1966.

Rehearing Denied Feb. 23, 1966.

------◇------

Beckmann, Stanard, Wood & Vance, San Antonio, for appellant.

Morriss, Boatwright, Lewis & Davis, San Antonio, Howard M. Wayland, Houston, for appellee.

BARROW, Justice.

Appellee, Jennie Mae Preston, brought this suit to recover death benefits under an endorsement to a workmen's compensation policy issued by appellant, Liberty Mutual Insurance Company, to Houston Laboratories, a Texas corporation, whereby coverage was extended to all executive officers. Allan Hill Preston, president, general manager, and owner of 85% of the stock of this corporation, was killed in a one-car automobile accident on February 8, 1963,

about two miles south of Leakey, Real County, Texas. The only issue in dispute was whether or not he was acting in the scope of his employment at the time of the accident, and the jury found that he was.

Appellant asserts errors in the admission of hearsay testimony; that there is no evidence to support the jury finding, and, in any event, the judgment should bear interest at the rate of 4% rather than 6% as provided in the judgment. Appellee by cross-assignment urges that the judgment should include the funeral expenses paid by her, and that the appellant did not have sufficient cause for taking the appeal and therefore should pay damages.

, Houston Laboratories, hereinafter referred to as Company, was located in Houston, Texas, where it operated analytical laboratories, doing analyses and tests of agricultural, mineral and petroleum products. Preston customarily made a trip to West Texas each winter for the purpose of calling on old customers and soliciting new business. Mrs. Preston, who also worked in the business, was permitted to testify over appellant's objection that decedent told her before he left that he was going on a business trip to New Braunfels and West Texas. Similar testimony was given, over appellant's objection, by Mr. Wooden, Vice-President of the Company, and Miss Celeste Borman, secretary to Mr. Preston. Mrs. Preston was also permitted to testify that decedent had telephoned her on February 6, 1963, and told her that he was going to Abilene and call on a customer.

The trial court properly admitted these statements by deceased as declarations tending to show his state of mind and purpose in making this trip. The applicable rule is set forth in McCormick & Ray, Texas Law of Evidence, § 868, as follows: "When it is important to know whether an employee was acting within the scope or course of his employment at the time of an injury or accident, his earlier statements

of purpose and intention are a valued clue, and sometimes the only one. They are admitted as res gestae, but at least one court has more properly admitted such a declaration simply as the expression of an existing state of mind." In a Per Curiam opinion in Great American Indem. Co. v. Elledge, 159 Tex. 288, 320 S.W.2d 328 (1959), the Supreme Court, in considering admissibility of a statement that decedent said he had to go to the plant and work, said:

> "We agree with the Court of Civil Appeals that the statement made by the deceased employee to his wife and overheard by Barbara Jean Noack on the night of September 3, 1956, is admissible as a declaration tending to show the state of mind and immediate purpose of the decedent on that night."

See also Mid-Continent Cas. Co. v. Conrad, Tex.Civ.App., 368 S.W.2d 686, wr. ref. n. r. e.

■ These statements were admissible and justify a finding that Preston's purpose in leaving Houston on February 2d was to make a business trip to West Texas on behalf of the Company. He had no set itinerary for this trip and had made no specific appointments. The undisputed evidence shows, however, that Preston combined personal purposes with this trip and it is necessary to establish that he was acting in the scope of his employment at the time of the accident, which occurred about 8:00 a. m. on February 8.

Appellant also complains of the admission into evidence, over its objection, of testimony from a Leakey garage operator that he received a telephone call about 7:00 a. m. on the 8th, from a man who identified himself as Mr. Preston. This man said he was calling from Garner Park and was having trouble with the alignment or something on the front of his 1956 Oldsmobile, and inquired as to whether it could be fixed. The garage operator advised that he could correct it to where the car could be operated safely, and the caller said he was coming in.

■ The general rule is that it is necessary to the admission of testimony as to the contents of a telephone conversation, to establish identity of the person with whom the witness talked. This is done if the witness says he identified the voice of the person with whom he talked. It is also regarded as established if the message reveals that the speaker had knowledge of facts that only the speaker would be likely to know, or if corroborated by facts and circumstances tending to reveal the identity of the speaker. See Gleason v. Davis, 155 Tex. 467, 289 S.W.2d 228 (1956); Colbert v. Dallas Joint Stock Land Bank, Tex. Com.App., 136 Tex. 268, 150 S.W.2d 771 (1941); Webb v. British American Oil Producing Co., Tex.Civ.App., 281 S.W.2d 726, wr. ref. n. r. e.

■ In our opinion the identity was sufficiently established where in addition to giving the name of Preston, the speaker said he was calling from Garner Park and was operating a 1956 Oldsmobile. The witness said he recalled the incident because he thought the park was closed that time of year. Obviously, there would be only a few people in the Park at that time, and the name, plus the type of automobile, and the fact that Preston was in that area established the identity.

■ Appellant urges that, despite the evidence showing the overall purpose of the trip to West Texas there is no evidence to support the jury's finding that Preston was acting in the scope of his employment at the time of the accident. In considering this "no evidence" point it is our duty to view the evidence and the reasonable inferences therefrom in the light most favorable in support of the finding of the jury. Jecker v. Western Alliance Ins. Co., 369 S.W.2d 776 (Tex.1963). Actually, there is very little conflict in the evidence on this question, and of necessity same is largely circumstantial. The problem of scope of

employment is made more difficult by reason of the fact that the deceased was the person in charge of the management and direction of the Company.

Mr. Preston left his home in Houston on Saturday, February 2, 1963, and went to New Braunfels to make a business call. He was alone in a 1956 Oldsmobile owned by the Company and furnished to him for his regular use. All operating and upkeep expenses on this car were paid by the Company. He telephoned Mrs. Preston from New Braunfels on Sunday, February 3. Mrs. Preston testified that after he left New Braunfels he was going to Abilene and West Texas, probably "Lubbock and Pecos and out in there." He spent Sunday night, February 3, in Garner State Park. There was testimony that Preston enjoyed the outdoor life and took a tent and other camping equipment with him on trips and usually stayed outdoors or in a motel rather than in a hotel. Garner State Park is about 110 miles west of New Braunfels, whereas Abilene is about 240 miles northwest and on a different route. There is no evidence that anyone connected with the Company, including Mrs. Preston, knew that Preston was going to Garner Park, or even that he had been there, until after this accident occurred.

The 1962 Company Christmas Card list was introduced in evidence to show the list of all Company customers, and the nearest one is at Eagle Pass, which is located about 100 miles southwest of the Park. There is no evidence that the Eagle Pass customer was visited on this trip.

On Monday morning, February 4, Preston paid the Park $1.00 for the previous night's camping fee, and also stopped in a grocery store at Happy Hollow, which is between the Park and Leakey. He informed the grocer that he was on a vacation in the Park and inquired if there was a druggist in Leakey. (Leakey is about 12 miles north of the Park and Uvalde is about 30 miles south.) It was stipulated that at 12:25 p. m. on February 4, Preston was arrested in Uvalde County and charged with driving while intoxicated. He remained in the Uvalde County jail until the 5th when he pleaded guilty and was fined $350.00. Although he was sentenced to three days in jail he was released from custody. He returned to Garner Park and paid the attendant $3.00 for camping facilities for the nights of February 4, 5 and 6.

At noon on the 6th, Preston called the Company collect and talked to Mrs. Preston. The telephone bill identifies this call as being from the Leakey Exchange, which includes Garner Park. Mrs. Preston testified that he said that he was going to Abilene and call on Bill Coleman. Mr. Coleman was identified as being with Paymaster Mills, a customer of the Company.

Sometime during Thursday, the 7th, Preston paid the attendant at Garner Park $2.00 for camping facilities for the nights of February 7 and 8. There is no other testimony of his activities until Friday morning the 8th. Shortly before the fatal accident, Preston stopped at the grocery store at Happy Hollow for the third time. He purchased twelve gallons of gas to fill his twenty-gallon tank, paid for same in cash and drove on towards Leakey. About fifteen minutes later the grocer was advised of the fatal accident.

At the time of the fatal accident, Preston was dressed in khaki clothes, however, his dress clothes were hanging in the car. It is very significant that Preston left his tent and some other personal possessions at the Park. A map introduced in evidence shows that Abilene is about 210 miles north of Leakey.

■ Sec. 1b, Art. 8309, Vernon's Ann. Civ.Stats., enacted in 1957, provides the test for determining coverage under the workmen's compensation act for injuries occurring during the course of travel. This section has two parts, and both tests must be met by claimant. Agricultural Ins. Co. v. Dryden, Tex., 398 S.W.2d 745; Shelton v. Standard Insurance Co., 389 S.W.2d 290 (Tex.1965); Jecker v. Western Alliance

Ins. Co., supra; Janak v. Texas Employers' Ins. Ass'n, 381 S.W.2d 176 (Tex.1964).

■ The first part declares injuries during travel to be in the course of employment and therefore compensable only when one of the four prerequisites enumerated in the first sentence of Sec. 1b is present. Appellee's proof that the transportation on this trip was furnished and paid for by the Company met the test of the first part.

The second part deals with the "dual purpose" rule. As stated in Janak: "It declares that injuries occurring during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment, and therefore compensable, 'unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip'."

■ It is further settled that the requirements of Art. 8309, § 1, are not satisfied by proof that injury occurred while the workman was engaged in or about the furtherance of his employer's affairs or business. The claimant must also establish that the injury was of a kind and character that had to do with and originated in the employer's work, business, trade or profession. Shelton v. Standard Ins. Co., supra; Texas General Ind. Co. v. Bottom, 365 S.W.2d 350 (Tex.1963).

■ Appellee urges that the presumption of scope of employment arising from the fact that Preston was driving a Company owned vehicle at the time of the accident is sufficient to raise a fact issue. This is a rebuttable presumption which compels the disclosure of facts peculiarly within the knowledge of the one against whom the presumption operates and one that disappears when met by rebutting proof. Lum-

bermen's Lloyds v. Jones, 153 Tex. 379, 268 S.W.2d 909 (1954); Empire Gas & Fuel Co. v. Muegge, Tex.Com.App., 135 Tex. 520, 143 S.W.2d 763 (1940); Whittle v. Saunders, Tex.Civ.App., 396 S.W.2d 155, no wr. hist.; Henderson Drilling Corp. v. Perez, Tex.Civ.App., 304 S.W.2d 172, no wr. hist.; Hudiburgh v. Palvic, Tex.Civ. App., 274 S.W.2d 94, wr. ref. n. r. e.

■ It is our opinion that this presumption was rebutted in this case when it was shown that Preston had combined a personal mission with the business trip by camping at Garner Park from February 3 to 8. Any other information is known only to appellee in that she talked to Preston by telephone on February 3 and 6. She did not testify that she even knew he was in Garner Park. Her evidence that he stated at noon on February 6 that he was going to Abilene amounts to no more than a scintilla that he was enroute there on February 8, in view of the lapse of time and the fact that his tent and other personal possessions were still in the Park where he was registered for another night.

■ The question remains as to whether the injury is compensable if we assume Preston was taking the company car to Leakey to be repaired at the time of the accident. There was testimony it was his responsibility to keep the car in good repair, although the Company paid the expense of the repairs. The facts are somewhat analogous to those of Texas General Indemnity Co. v. Bottom, supra, although there Bottom had leased his truck to his employer. Under the rule in that case, Preston was not acting in the scope of his employment in taking the car to Leakey to be serviced. He was on this road at this time and place because of his personal mission in going to Garner Park, which mission had not been abandoned. Nothing in his employment contract required him to be in Garner Park or Leakey. His use of the vehicle for this deviation was not an incident of his employment for the Company, and we cannot say that he had returned to

the scope of his employment by driving to Leakey for the purpose of having the car repaired.

There is no evidence to support the finding of the jury that Preston was acting in the scope of his employment for Houston Laboratories at the time of the accident. This requires us to reverse the judgment and to render it for appellant. It necessarily follows that appellee's cross-assignments are without merit.

The judgment is reversed and here rendered that appellee take nothing by this suit.