**HARDWARE MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Frankie McDONALD, Appellee.**

**No. 15239.**

Court of Civil Appeals of Texas, San Antonio.

Nov. 21, 1973.

Rehearing Denied Dec. 19, 1973.

Kenneth L. Clark, Huson, Clark, Thornton & Summers, San Antonio, for appellant.

Warren Burnett, Richard J. Clarkson, Odessa, for appellee.

BARROW, Chief Justice.

This is a workmen's compensation death case. Judgment was entered for claimant-widow based on the jury finding that de-

ceased, James A. McDonald, was drowned in the course of his employment by Walker-McDonald Bit Company, Inc.

Appellant, the compensation carrier for Walker-McDonald Bit Company, Inc., hereinafter referred to as employer, has timely perfected this appeal and asserts eight assignments of error. It urges by four points that there is no evidence or insufficient evidence to support the jury finding, and that the jury's finding that deceased was drowned in the course of his employment is contrary to the great weight and preponderance of the evidence. Three points complain of the admission of testimony from appellee regarding a telephone conversation with deceased several hours before he was drowned, in that said conversation was hearsay and was further barred by the Dead Man's Statute. The final point complains of the court's failure to grant a mistrial after an allegedly improper question by appellee's counsel to the executive officer of employer.

Employer was in the business of manufacturing and reworking rotary drill bits, which were principally used in seismograph operations. Deceased was a brother of the executive officer and had worked for the executive officer, or employer, in several capacities since 1956. Since 1965, deceased had been on the road for employer. He was classified as a salesman and traveled for two or three hundred miles in all directions from Odessa to wherever seismograph operations were being conducted. He traveled in a company-owned pickup truck with an enclosed van, and he delivered the bits to contractors on the various job sites. In addition to delivery of drill bits which were on order, it was a part of deceased's duties to solicit new business. He was paid a monthly salary, plus all of his travel and living expenses while on the road, including any drinks or meals he might buy for a customer.

On March 17, 1970, deceased left in the company truck and went from Odessa to Brady for the delivery of bits. The records found after his death show that he went from Brady to Junction and then on to Kerrville. From Kerrville he went to New Braunfels. Following a delivery in New Braunfels, deceased returned to Kerrville late that afternoon and checked into the Del Norte Motel, where he frequently stayed. His next delivery was to be made in Abilene.

That evening he went to the Ranch House Cafe, which is located on the highway about five miles west of Kerrville. He had eaten at this cafe on other occasions and was known by the owner and a waitress, both of whom testified at the trial. The waitress testified that deceased drank five beers and ate a steak before leaving around 10:00 p. m. The owner of the cafe confirmed that deceased was there, and in her opinion, he was intoxicated when he left. Deceased apparently returned to his motel room and made several telephone calls, including a call to his wife. He later returned to the Ranch House Cafe where he sat at the bar for about forty-five minutes. He left the cafe between 11:30 p. m. and midnight.

The Ranch House Cafe is about two hundred yards north of the Guadalupe River, and Ms. Kay Armour, who owns the cafe, also owns the property to the river. Although there is a private dirt lane from the back of the cafe down to the river front, the property is posted against trespassers. Ms. Armour testified that on another occasion, deceased had inquired if he could fish in the river, and she advised him that her prior permission would be required. He made no request of her on this occasion for permission to fish and did not mention to anyone that he was going to the river. Nevertheless, in the middle of the morning of March 18, Ms. Armour noticed a truck parked parallel to the river bank, and subsequent investigation discovered the body of deceased in the river. The left wheels of the truck were stuck in the mud very close to the river bank, and the left door, which extended out over the river, was open. From the physical evidence at the scene, it was presumed that the truck

became stuck and that deceased stepped or fell out of the tilted truck while the motor was running. The truck was in gear, and the wheels of the truck continued to spin in the mud until the motor burned out. The bank was about three feet above the river bed at this location.

Article 8309, Section 1(4), Vernon's Tex.Rev.Civ.Stat.Ann., provides in part that the term "injury sustained in the course of employment" shall include all " . . . injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon employer's premises or elsewhere." The interpretation of this statute is particularly difficult in the situation of an employee whose duty subjects him to travel away from the employer's premises.

■ The applicable rule in such situations was stated in Shelton v. Standard Insurance Company, 389 S.W.2d 290, 293 (Tex.1965,) as follows: "Most courts which have considered the question regard an employee whose work entails travel away from the employer's premises as being in the course of his employment when the injury has its origin in a risk created by the necessity of sleeping or eating away from home, except when a distinct departure on a personal errand is shown." See also Walker v. Texas Employers' Insurance Association, 443 S.W.2d 429 (Tex.Civ.App.—Fort Worth 1969, writ ref'd), Liberty Mutual Insurance Company v. Preston, 399 S.W.2d 367 (Tex.Civ. App.—San Antonio 1966, writ ref'd n. r. e.). A similar rule applies in a majority of other jurisdictions. Larson, Workmen's Compensation (Desk Ed.), Sections 25.00 and 25.20 (1972).

Thus in Shelton, coverage was provided an employee for injuries sustained when struck by a car while crossing the street from his hotel on his way to the nearby restaurant to eat. The employee was on a business trip of several days duration, and it was held that food and sleep were, therefore, necessary if he was to perform the job which he was hired to do.

On the other hand, in Walker, coverage was denied where the employee, after eating and returning to his motel, decided to go to the motel room of a friend's friend for a drink, and was shot as he walked into the latter's room. It was held that the late-night visit to the room of an unknown person was not an incident of his employment, and that said injury did not have to do with and did not originate in his employer's business.

In Preston, coverage was denied an executive of a company who, although on an extended sales trip to West Texas, had turned aside from said business trip on a personal mission to spend a few days camping in Garner Park. He received fatal injuries while traveling from the park to a nearby town. His tent and camping gear were still at the park at the time of his accident.

■ Here deceased was in Kerrville on his employer's business and, under the rule set forth in Shelton, was within the scope of his employment while sleeping and eating. However, his drowning did not arise from either of these activities. Appellee urges that it was within the scope of his duties to entertain prospective customers, which would include taking a customer fishing. Nevertheless, there is no evidence whatsoever in this record that deceased was with a customer at the time in question. In fact, the evidence is undisputed that he was alone the entire evening, and there is no evidence from any of deceased's supervisors that he was to call on any customer in Kerrville. He had never fished at this river before, either with or without a customer.

The undisputed evidence establishes that deceased had returned to the cafe after eating his evening meal and making several telephone calls. On this return to the cafe, he was on a purely personal mission

of his own. There is no explanation of why he subsequently determined to go down to the river alone and without permission from the owner. It is clear, however, that such activity did not have anything to do with furtherance of his employer's business, and his subsequent drowning was not of a kind and character of injury that had to do with and originated in the employer's work or business.

This conclusion requires a reversal and rendition of the judgment; and, therefore, it is unnecessary to consider appellant's argument relating to whether deceased was intoxicated at such time, as a matter of law. It is not necessary to consider the factual insufficiency points or those relating to the admission of evidence, since these points, if sustained, would require a remand.

The judgment of the trial court is reversed, and it is here rendered that appellee, Frankie McDonald, take nothing by her suit.

CADENA, J., concurs in the result.