**Sandra Judy Glenn ASHLEY, et al., Appellants,**

v.

**The HOME INDEMNITY COMPANY, Appellees.**

No. 07–83–0195–CV.

Court of Appeals of Texas, Amarillo.

Feb. 11, 1985.

Rehearing Denied Feb. 28, 1985.

Bean, Francis, Wills & Street, Robert Bean, Dallas, for appellants.

Gibson, Ochsner & Adkins, S. Tom Morris and Jeffrey C. Voiles, Amarillo, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellants Sandra Judy Glenn Ashley, et al. sued appellee The Home Indemnity Company to recover workers' compensation benefits that appellee refused to pay. Sandra Ashley's husband, James Ashley (herein Ashley), was a truck driver for Skaggs Supercenters, Inc. On June 29, 1979 at 5:00 p.m. he left Richardson, Texas for Albuquerque, New Mexico carrying produce for Skaggs in a Skaggs truck. Ashley reversed his course after he got to or near Amarillo. His truck overturned approximately 80 miles east of Amarillo at 12:30 a.m. the next morning. He was killed in the accident. Ashley did not tell anyone why he reversed his course and began driving away from his original destination and toward his point of origination. At trial the jury, in response to the only issue submitted to them, found Ashley's death occurred in the course of his employment. The trial court granted judgment notwithstanding the verdict in favor of appellee.

Appellants, in their sole point of error, contend that the trial court erred in its action because there was sufficient evidence to support the jury's verdict. We agree and, accordingly, remand this cause to the trial court for entry of a judgment in accordance with the jury's verdict and the holding of this Court.

In determining the challenge of appellants, we must decide whether the record contains evidence of probative value which, with the reasonable inferences therefrom, will support the jury's verdict. In making that decision, it is the duty of this Court to view the evidence in its most favorable light in support of the finding, considering only the evidence and the inferences that support the finding and disregarding all that are contrary thereto. *Scott v. Millers Mutual Fire Insurance Co. of Texas*, 524 S.W.2d 285, 288, 289 (Tex.1975); *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957).

James Ashley had been a truck driver for Skaggs Supercenters, Inc. for some six months. His primary responsibility was to haul goods from Skaggs' Richardson terminal to its outlet in Albuquerque, New Mexico. From Albuquerque he would generally proceed to Liberal, Kansas. At Liberal he would pick up a load and return it to Richardson. On the date in question, he had returned from such a trip about 2:00 a.m. He had made a local delivery, returned to his house, slept about an hour, did some work around the house, and returned to Skaggs' "yard" to begin another trip. As noted above, about 5:00 p.m. that day, he left Richardson for Albuquerque carrying produce for Skaggs in a Skaggs truck and reversed his course after he got to or near Amarillo. The fatal accident occurred approximately 80 miles east of Amarillo at 12:30 a.m. on June 30, 1979.

After Ashley left Richardson, he was never again in contact with his wife nor with his dispatchers and the record does not reveal what route he took to Amarillo. However, appellee's witness Robert Bailey, who was a truck driver and relief dispatcher for Skaggs, testified that he had made

this run over this exact route. He said that Ashley was dependable, that he showed up for work on time and that he would usually arrive at his destination on time.

Robert Ballard testified that he was the dispatcher on duty the afternoon that Ashley left on the trip in question and that Ashley had no scheduled stops between Richardson and Albuquerque. He said that Ashley was dependable and that he had never had any trouble with Ashley drinking. He also said Ashley would usually leave with a load on time and that he usually arrived at his destination on time. Both Ballard and Bailey testified that they knew of no reason, business or personal, why Ashley reversed his course. Bailey said that normally the trip to Albuquerque and Liberal was made with two drivers because of its length.

Both dispatchers testified that in the event a driver encounters a problem requiring a delay or a detour, standard company procedure would be that the driver call his dispatcher to report the problem. However, Ballard said that the drivers do not always follow the standard procedure. The evidence also shows that Skaggs' drivers are given credit cards and have access to a WATS line to obtain service assistance in the event of mechanical problems. Neither dispatcher was contacted by Ashley after he left Richardson and no credit card charges were made by Ashley. Ballard testified that he saw Ashley when he left on the trip and that Ashley was not intoxicated at that time. While there is other evidence pertaining to Ashley's possible intoxication at the time of the accident, appellee concedes that this was a fact issue resolved against it by the verdict of the jury.

■ It is undisputed that Ashley was driving a Skaggs truck on a run for Skaggs at the time of his death. Generally, these facts give rise to a presumption that Ashley was acting in the scope of his employment when the accident occurred. *Lumbermen's Lloyds v. Jones*, 153 Tex. 379, 268 S.W.2d 909, 912 (1954); *Liberty Mutu-*

*al Insurance Company v. Preston*, 399 S.W.2d 367, 372 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). *See also Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex.1971); *Houston News Co. v. Shavers*, 64 S.W.2d 384, 386 (Tex.Civ.App.—Waco 1933, writ ref'd) (in the context of master-servant). This is a rebuttable presumption which vanishes when *positive* evidence to the contrary is introduced, at which point the burden is back on the plaintiff to produce other evidence. *Lumbermen's Lloyds v. Jones*, 268 S.W.2d at 912 (quoting *Houston News Co. v. Shavers*, 64 S.W.2d at 386).

■ However, we do not attempt to decide whether a presumption of course and scope of employment arose in this case because the office of such a presumption is to invoke a rule of law that compels the jury to reach that conclusion, in the absence of positive evidence to the contrary from appellees. Having obtained a jury finding that Ashley was injured in the course of his employment, appellants had no need for the presumption to compel the jury to reach that conclusion. Their burden with respect to the scope of employment issue has been satisfied if there is evidence to support the finding that was made. *Scott v. Millers Mutual Fire Insurance Co. of Texas*, 524 S.W.2d at 288.

■ Moreover, even assuming arguendo, that any presumption of course of employment had been dispelled by the receipt of evidence to the contrary, the facts upon which such a presumption could have been based have not disappeared but remain in evidence and would support any inferences that may properly be drawn therefrom. *Sudduth v. Commonwealth County Mutual Ins. Co.*, 454 S.W.2d 196, 198 (Tex. 1970). Therefore, the question for our decision is whether this record contains evidence of probative value which, with the reasonable inferences therefrom, will support the jury's finding.

■ The undisputed evidence that Ashley left in a Skaggs truck on a mission for his employer is a circumstance that could

be considered by the jury as evidence of his acting in the course and scope of his employment. *See Lumbermen's Lloyds v. Jones,* 268 S.W.2d at 912. That fact, coupled with the evidence that Ashley had been a dependable employee and that the accident occurred on a route normally travelled by employees performing the delivery for which Ashley was employed, viewed in its most favorable light, are additional circumstances from which the jury could reasonably infer that the accident occurred while Ashley was within the scope of his employment. The fact that Ashley had turned around and was proceeding back toward Richardson, in the absence of any evidence that the reversal was because of a personal mission or purpose, at most raised a fact issue which was resolved against appellee by the jury.

In support of its position that there is no evidence to support the verdict, appellee places primary reliance upon the holdings of the courts in *Lumbermen's Lloyds v. Jones,* 153 Tex. 379, 268 S.W.2d 909 (1954); *Hardware Mutual Casualty Company v. McDonald,* 502 S.W.2d 602 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.); *Liberty Mutual Insurance Company v. Preston,* 399 S.W.2d 367 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.) and *Wolverton v. Hartford Accident & Indemnity Co.,* 254 S.W.2d 834 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.). The facts in each of those cases are distinguishable from those here existent.

In *Jones,* although the employee was driving a truck owned by and registered in the name of the alleged employer, evidence was produced by the defendant, undisputed by the plaintiff, that at the time in question, the deceased employee was actually employed by another employer. In *Preston,* the undisputed evidence was that Preston, the deceased employee, had combined personal purposes with a business trip. At the time of his fatal accident, he had turned aside from the business trip to camp at Garner State Park and had actually been camped there some five days. His fatal injuries occurred at a time when he was travelling from the park to a nearby town at a time when his tent and camping gear were still in the park.

In *McDonald,* the employee had returned to a cafe bar after he had eaten his normal evening meal, a fact which the court noted made that later trip a purely personal one, and then, without permission from the owner, went along a private dirt road, posted against trespassers, some two hundred yards to the Guadalupe River where he was found drowned the next morning. The court held that the trip to the river, alone and without permission from the owner, could not have had anything to do with the furtherance of his employer's business.

In *Wolverton,* the employee was driving his personal automobile at the time of the accident. He was to go to Carlsbad, New Mexico, but the accident occurred while he was going towards Canyon, in a direction opposite from Carlsbad. The actual holding of the court was that the issue as to scope of employment was properly submitted to the jury and was sufficient to sustain the finding of the jury that the employee was *not* acting in the scope of his employment.

In summary, we remain convinced that, under the standard of review which we must apply, the evidence that Ashley, an admittedly dependable employee, was driving his employer's vehicle on his delivery mission along a route normally travelled by him and other employees, without any evidence of a personal mission save that he inexplicably reversed his course, is sufficient to support the jury verdict.

Appellant's point of error is sustained, the judgment of the trial court reversed and the cause remanded to the trial court for entry of a judgment in accordance with the jury finding.

REYNOLDS, Chief Justice, dissenting.

I respectfully dissent. In my view, the claimants failed to evidence support for the jury's verdict that the worker's fatal injury was received in the course of his employment. I, therefore, would affirm the trial

court's take-nothing judgment rendered notwithstanding the jury's verdict.

James Douglas Ashley, the deceased worker, was employed as a truck driver by Skaggs Supercenters, Inc. His primary responsibility was to haul merchandise in Skaggs' truck from Skaggs' Richardson, Texas, terminal to Albuquerque, New Mexico, from whence he usually would travel to Liberal, Kansas, pick up a load of beef and return with it to Richardson. The parties are agreed that Ashley's normal highway route from Richardson to Albuquerque would take him through Amarillo, Texas, the approximate mid-point about 360 miles east of Albuquerque.

At approximately 5 p.m. on 29 June 1979, Ashley departed the Richardson terminal, driving a Skaggs truck carrying produce and bound for Albuquerque. After leaving the terminal, Ashley never contacted his dispatcher or his wife. The next report of his whereabouts came from the deposition testimony of Joyce Hughey who, accompanied by her husband, Charles Hughey, was driving a truck southeasterly from Amarillo on their way from Colorado to Lone Star, Texas. Mrs. Hughey first saw the truck driven by Ashley as it was coming up behind the truck she was driving southeasterly on U.S. Highway 287 about a mile east of Amarillo.

The two trucks traveled southeasterly along the highway, taking turns passing each other, for some 80 miles. Mr. Hughey, who had been asleep, noticed the truck Ashley was operating some 400 yards ahead about thirty minutes before the accident. Both the Hugheys observed that Ashley was driving straight at a steady speed within the speed limit and never saw anything thrown from Ashley's truck.

About 12:30 a.m. on 30 June 1979 at a point 2.9 miles west of Memphis, Texas, and some 80 miles southeast of Amarillo, Ashley's truck left the road and overturned. Ashley was killed. A blood sample analyzed by the Department of Public Safety toxicology laboratory in Austin revealed that at the time of his death, Ashley had a blood alcohol concentration of .24% by weight, which in the opinion of the forensic toxicologist would make a person "blind staggering drunk," but no intoxicating liquor or containers for it were found at the scene of the accident.

The evidence adduced reveals that Ashley had napped only an hour or so after completing a prior delivery, and was tired, before he began his fatal trip. Skaggs' standard procedure required a driver to, and Ashley was said to be the type of a driver who would, call his dispatcher to report a problem and ask for instructions, even though delay was not necessarily reported by all drivers. There is no evidence of probative force to show, and at most the mere surmise or speculation of, a business or personal reason for Ashley to turn at mid-point from his course of travel to his assigned destination and retrace the route he apparently had traveled for 80 miles until the accident occurred.

When The Home Indemnity Company, the compensation insurance carrier for Skaggs, refused to pay the claim for death benefits under the workers' compensation statute, Sandra Judy Glenn Ashley, the surviving widow, individually and as next friend of the Ashleys' minor children, brought the suit underlying this appeal. The insurance carrier answered, alleging that workers' compensation benefits were not recoverable because Ashley was not in the course and scope of his employment at the time of his death, and that he was at the time in a state of intoxication.

A jury returned its verdict, answering, in response to the single special issue and instructions submitted, that Ashley received an injury in the course of his employment by Skaggs. Mrs. Ashley and the children moved for judgment on the verdict; the insurance carrier moved for judgment notwithstanding the verdict or, alternatively, for a new trial submitting that there is no evidence to support the jury's answer, that the evidence conclusively shows Ashley did not receive an injury in the course of his employment, and that the

evidence is factually insufficient to support the jury's answer.

Hearing the motions, the trial court denied Mrs. Ashley's and the children's motion and granted the insurance carrier's motion for judgment notwithstanding the verdict. The court then rendered judgment decreeing that Mrs. Ashley and the children take nothing.

Appealing from the judgment, Mrs. Ashley and the children charge the court with error in granting the insurance carrier's motion for the reason that there is sufficient evidence to support the jury's verdict. The insurance carrier commendably concedes that the issue of intoxication was a fact issue decided adverse to its contention and that it will not pursue the matter; however, it urges that Mrs. Ashley failed to carry her burden to prove that Ashley died while acting within the course and scope of his employment.

As defined in the Workers' Compensation Act, an "injury sustained in the course of employment" is one of the kind and character having to do with and originating in the work, business, trade or profession of the employer and is sustained while the worker is engaged in or about the furtherance of his employer's affairs or business, whether upon the employer's premises or elsewhere. Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (Vernon 1967); *Texas General Indemnity Company v. Bottom,* 365 S.W.2d 350, 352–54 (Tex.1963). Generally, an injury received by a worker while traveling on a public highway is not incurred in the course of employment, *Safety Casualty Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238, 242 (1942); however, if the injury is sustained while the worker is traveling on a highway in transportation furnished as a part of his contract of employment, or when the worker is directed in his employment to proceed from one place to another, the injury is sustained in the course of employment. Tex.Rev.Civ.Stat.Ann. art. 8309, § 1b (Vernon 1967); *Safety Casualty Co. v. Wright, supra.* The claimant of workers' compensation benefits has the burden to establish that the injury was

sustained in the course of employment. *Scott v. Millers Mutual Fire Insurance Co. of Texas,* 524 S.W.2d 285, 288 (Tex. 1975); *Texas General Indemnity Company v. Bottom, supra.*

Applying these principles to the undisputed facts, it is certain that when Ashley, as directed, left the terminal in transportation furnished by Skaggs and traveled the highway toward Albuquerque in furtherance of Skaggs' business, he was in the course and scope of his employment. Yet, at the approximate mid-point of travel to his directed destination, he inexplicably reversed his course and traveled in the direction he had come for some 80 miles until he sustained his fatal injury. The question, then, is: What is the effect of Ashley's unexplained 80-mile reversal of his directed course of travel?

Mrs. Ashley and the children contend that since there is no evidence that Ashley's course reversal was for the purpose of a personal errand, the jury could conclude that he still was in his course and scope of employment at the time of his death. In so contending, the insurance carrier asserts, Mrs. Ashley and the children ignore their burden to establish that Ashley's fatal injury was sustained in the course of his employment; and, since they did not produce any evidence of a business reason for Ashley's 80-mile reverse deviation from his assigned route, they failed to carry their burden of proving that he died while acting within the course and scope of his employment.

I, agreeable to the trial court's decision, would hold that Mrs. Ashley and the children failed as a matter of law to discharge their burden to establish that Ashley's fatal injury was sustained in the course of his employment. Although Ashley's operation of the truck to Amarillo was within the course and scope of his employment, his unexplained 80-mile reversal of course to his death raised the issue whether he was at that time in the course and scope of his employment by Skaggs. This obtains because the evidence reveals that Ashley was not directed in his employment to retrace

his route upon reaching Amarillo, and that his injury did not occur at a place he should have been on the normal route and direction of travel in the furtherance of Skaggs' business of having the produce he was hauling delivered to Albuquerque.

The reversal-of-course evidence rebutted any presumption of course of employment at the time of Ashley's fatal injury, if the presumption could arise in this case, for that evidence shows his injury was sustained at a place where he properly would not be after reaching Amarillo under his direction to proceed from the Richardson terminal to Albuquerque. *Cf. Scott v. Millers Mutual Fire Insurance Co. of Texas,* *supra,* (reciting case holdings that where an employee is found dead at a place where his duties require him to be, or where he might properly have been in the performance of his duties, during the hours of his work, and there is an absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of his employment within the meaning of the compensation statute; and, also, recognizing that the presumption is rebuttable). Then, to discharge their burden of proof, Mrs. Ashley and the children had to produce evidence to support the jury's finding that Ashley received an injury in the course of his employment by Skaggs, *id., i.e.,* that his injury was of a kind and character that had to do with and originated in the work, business, trade or profession of his employer, Skaggs, and was received while he was engaged in or about the furtherance of Skaggs' affairs or business. *Texas General Indemnity Company v. Bottom, supra,* at 354.

Mrs. Ashley and the children concede that "there is no evidence why Ashley reversed course." It follows that under the circumstances recorded, they did not produce any evidence of probative force to show that at the time of Ashley's death, he was in the course of his employment; and, therefore, the trial court's granting of the insurance carrier's motion for judgment notwithstanding the jury's verdict was correct. *Id.*

Accordingly, I would affirm the trial court's take-nothing judgment.